T. CLOWES *against* DICKENSON and others.

The plaintiff purchased two lots of land of *V.*, against whom there was an existing judgment. All the real estate of *V.* (the residue of which was more than sufficient to satisfy the judgment) was sold, subject to all incumbrances, under a subsequent judgment, to the defendant, who, afterwards, took an assignment of the prior judgment, and issued execution thereon, under which the two lots of the plaintiff were sold, and purchased by the defendant, who made improvements, and sold one of the lots: *Held,* that though the Court would have interposed and prevented the sale of the plaintiffs' lots, if he had applied in due season, for that purpose; yet, as he knew of the sale, at the time, and delayed four years, before he filed a bill for relief, the Court refused to disturb the sale, or to direct a reconveyance of the lots to him; but the defendant was ordered to pay the plaintiff, as an equitable indemnity, under the circumstances of the case, the sum for which the lots were sold, with interest from the time.

A judgment creditor is not entitled, in equity, to enforce the payment of the judgment against the land of a subsequent purchaser, as long as there is sufficient property of the debtor remaining unsold, to satisfy the judgment. And the creditor, in such case, is entitled to resort to the land of the purchaser, to the extent only of his debt, which may remain unpaid after the estate of the debtor has been exhausted.

So, if *A.* against whom there is a judgment, being seized of lands, sells a part of them, and dies seized of the residue, his *heirs* are bound to satisfy the judgment, as far as the assets descended to them are sufficient for that purpose: and they are not entitled to any contribution from the purchaser of a part of the lands of *A.*, for they stand in the place of their ancestor, and there is no equality of right between them and the purchaser, in respect to the judgment.

If there are several heirs, and the judgment creditor collects the debt from a part of the inheritance allotted to one of them, such heir is entitled to contribution from his co-heirs. *It seems,* that between purchasers in succession, at different times, of different parts of the estate of the judgment debtor, there is no contribution, for there is no equality of right between them.

THE bill, filed *February* 26th, 1817, stated that *Jacob I. Vanderheyden,* deceased, and *Catharine,* his wife, being

*May 7th.*

seized in fee of two lots of land, (Nos. 241 and 242) in *Troy*, conveyed the same by deed, dated *September* 10th, 1810, to the plaintiff, in fee, for the consideration of one thousand dollars, with covenant of warranty. That on the 5th of *September*, 1810, a judgment, by confession, was entered up against *J. I. V.*, in favour of *John Kimberly*, for 2,013 dollars 54 cents, debts and costs. That on the 27th *March*, 1811, *G. & H. Vail* recovered a judgment against *J. I. V.* for 203 dollars and 54 cents, damages and costs. That the sheriff of *Rensselaer* county, by virtue of writs of *fi. fa.* issued on these judgments, and others, seized all the real estate of *J. I. V.*, on the 13th of *May*, 1812, and sold the same, under the second judgment, subject to all incumbrances; and the defendant *J. D. Dickenson* became the purchaser for 3,410 dollars, to be applied to the payment of younger executions.

That the execution on the first judgment above mentioned was withdrawn, at the instance of *D.* That at the sale, it was well known to *D.* and to others concerned, that there were several incumbrances prior to the second judgment mentioned. That the payment of the elder incumbrances was considered as part of the purchase money, and the amount ascertained. That the real estate so purchased, was worth more than double the amount of the purchase money paid or to be paid by *D.*, including all older incumbrances. That *D.* refused to pay the judgment first above mentioned, or to disencumber the two lots of the plaintiff from it. That *D.* purchased that judgment, and procured an assignment thereof to be made to *G. Y. Lansing*, but for his own use and benefit, and procured the two lots so purchased by the plaintiff of *V.*, to be sold under that judgment, without the plaintiff's knowledge, and became the purchaser of the lots, on the 22d of *February*, 1813, for 650 dollars. That *J. I. V.* died on the 6th of *April*, 1813; and *D.*, on the 13th of *June*, 1816, procured his widow (defendant) to agree to

release her dower in certain real estate held by *D.*, and he agreed to convey to her one of the two lots (No. 242) so purchased by the plaintiff. That about 900 dollars was due on the first mentioned judgment, at the time of the sale of the plaintiff's two lots; and the proportion of that sum justly chargeable on the two lots of the plaintiff, (in case *D.* was not bound to discharge the judgment) would not, according to the 10th section of the act concerning judgments and executions, passed *March* 31st, 1801, exceed *sixty* dollars; and the residue, or 840 dollars, would have been justly chargeable on the real estate held by the defendant *D.*, subject to the judgment. That the plaintiff would have paid, before the sale, his proportion of the judgment chargeable on his lots, if the defendant *D.* would have paid his proportion, according to the act; and an application, for that purpose, was made on the part of the plaintiff, before the second sale, and *D.* gave encouragement as to the proposed arrangement, until the hour of sale, when he refused to enter into it. That at the time of the sale of the sheriff under the second judgment above mentioned, there was no *bona fide* incumbrance by *J. I. V.* on the two lots purchased by the plaintiff, except the judgment first above mentioned; and the property of *J. I. V.* in possession of, and purchased by *D.*, was worth fifteen times the amount of that judgment. The bill *prayed* for a discovery and production of deeds, &c., and that the plaintiff might be relieved from the sale of the two lots, absolutely, or conditionally, upon payment of his proportion of the said judgment, according to the said act; or that the defendant *D.* be decreed to convey lot No. 242 to the plaintiff, free from all incumbrances, &c.; and that the plaintiff might be relieved as to the right of dower; and that he might have an account of the rents and profits, since the death of *J. I. V.*, and for general relief.

The *answer* admitted that the sheriff, at the time charged in the bill, sold all the real estate of *J. I. V.* in his bailiwick;

including the two lots conveyed to the plaintiff, to *D.*, for 3,410 dollars, and gave him a deed. But it denied that the sale was made subject to, or under any undertaking of *D.*, to pay all prior incumbrances, or that the execution on the first mentioned judgment was postponed, or withdrawn at the instance of *D.* It was admitted, that *D.*, at the time of sale, knew of the prior judgment, and that he purchased with an expectation of obtaining an assignment of it, to secure himself. That the defendants *D.*, *A. G. Lansing*, *John Willard*, and *T. W. Ford*, jointly paid the purchase money to the sheriff; and they denied that the first or elder judgment was considered as any part of the purchase money, or that they knew of the amount of all prior incumbrances, or that such amount entered into the estimate of the price. That the real estate of *J. I. V.* was, at that time, under heavy incumbrances, of various voluntary and fraudulent deeds, mortgages, and judgments, and the sheriff, for that reason, sold the whole together. That *D.* purchased for the benefit of the other three defendants above named, as tenants in common. That many of the antecedent incumbrances on the estate of *J. I. V.* remain unsatisfied. That the defendants, since the sale, have discovered that the title to a greater part is defective. That the lots of the plaintiff, at the time of the purchase in 1812, would have been worth 1,200 dollars; that the rest of the lands purchased by *D.*, would have been worth 20,000 dollars, if the title had been clear; that the purchase was hazardous, and *D.* paid the full value, considering the state of the title. That *G. Y. L.*, on the suggestion of the defendant *L.*, on the 16th of *May*, 1812, purchased and took an assignment of the prior judgment above mentioned, for 900 dollars, there being due thereon, including costs, 937 dollars. That there is no stipulation between him and the defendants, but they believe that *G. Y. L.* is willing to give them the benefit of that judgment, on being repaid what he has advanced. It was admitted, that the sheriff, on the 12th of *March*, 1813, sold the two lots of the plaintiff, on an execution issued on the prior judgment, and that the defendant

*D.* became the purchaser, for 650 dollars. That *Lemuel Hawley*, agent of *Hiram Clowes*, the uncle of the plaintiff, attended the sale, and bid. That the deed for the two lots was given to the plaintiff, at the instance and for the benefit of *Hiram Clowes*, and upon an usurious agreement between *H. C.* and *J. I. V.* That the defendant *D.* never heard of the deed to the plaintiff, until after his last purchase, though he had been informed that *J. I. V.* had sold the lots to *H, C.*, under an agreement between them. The agreement between *D.* and the widow of *J. I. V.*, of the 10th of *April*, 1816, as stated in the bill, was admitted.

Several witnesses testified that the sheriff sold the property of *J. I. V.*, under *Vail's* judgment, subject to all elder judgments and incumbrances ; and they believed that these prior incumbrances entered into the calculations of the bidders. It appeared from the certificates of the clerks, that there were two mortgages on the property of *J. I. V.*, prior to the deed from him to the plaintiff, and which mortgages included the two lots conveyed to the plaintiff; and that there were also several judgments prior to the date of the deed. But the amount due on these mortgages and judgments was not ascertained.

*T. Clowes*, plaintiff, in person.

*A. Van Vechten*, for the defendants.

THE CHANCELLOR. When the plaintiff purchased his two lots of *Vanderheyden*, the residue of the real estate of *V.* was, in equity, first chargeable with the burden of payment of the prior judgment of *Kimberly*. If the owner of the judgment had attempted to enforce it against the two lots of the plaintiff, he would undoubtedly have been directed by this Court, upon due application, to have levied the judgment debt upon the lands remaining unsold by *V.*, because it was the proper debt of *V.*, and he ought to pay it. The creditor would have been entitled, in equity, to have resorted to

A judgment creditor cannot enforce his judgment against the land of a subsequent purchaser, as long as there is other land of the debtor remaining, sufficient to satisfy the judgment. He can resort to the land sold, only for what remains unpaid of his debt, after the other estate of the debtor is exhausted.

Heirs who pay off the judgment debt of their ancestor, are not entitled to demand contribution of a purchaser of his land, subject to the judgment.

But if the portion of one heir has been taken to pay the debt of the ancestor, he is entitled to contribution from his co-heirs.

the lots of the plaintiff, *only in the event* of the property remaining with *V.* not being sufficient to satisfy the judgment; and he would have been entitled to that resort only to the extent of the debt remaining unpaid, after the estate of *V.* had been exhausted. So, if *V.* had died seized of the residue of his real estate remaining unsold after the sale to the plaintiff, his heirs would have been bound to have discharged that judgment to the extent of the assets descended, and they would not have been entitled to any contribution from the plaintiff, seeing that there was no equality of right between them, in respect to that judgment debt. It would have been the exclusive duty of the heirs, to the extent of the assets, to have paid the judgment, and to have kept the plaintiff harmless, who was a *bona fide* purchaser from their ancestor, for a valuable consideration, and with covenants of warranty. If there were several heirs, and the estate of *V.* had been divided among them, and the judgment creditor had collected the debt from the portion of the inheritance allotted to one of them, such heir would have been entitled to contribution from his co-heirs, because the heirs would all have stood in *æquali jure*, in respect to the duty of discharging that debt; but he would not have been entitled to contribution from any other source.

These principles of equity are clearly laid down in *Sir Wm. Harbert's case*, (3 *Coke,* 11. *b.*) where it was resolved, that if *A.* be seized of three acres, and acknowledge a recognizance or statute, and enfeoff *A.* of one acre, *B.* of another acre, and the third acre descends to his heir, and if execution be sued out against the heir, he shall not have contribution against the purchasers, " for the heir sits in the seat of his ancestor;" and the rule is the same though the purchaser take the land without a valuable consideration, and though the heir be charged as tertenant. (Vide *Harvey v. Woodhouse*, 1731. *Select Cas. in Ch.* 3, 4. *S. P.*) It was also held in the same case, that the land of the conusor in a recognizance was exclusively to be charged, when di-

1821.

CLOWES
v.
DICKENSON.

yers persons have purchased any of the land subject to the recognizance, because the purchaser does not stand in the same degree with the conusor himself; but where there are several heirs, or where several persons join in a recognizance, one heir, or one conusor, should not be charged exclusively, for their relations and duties were equal, and the charge should be equal.

This case settles the question of contribution as between the vendor and the purchaser, or the heirs of the vendor and the purchaser; and if there be several purchasers in succession, at different times, I apprehend that in that case, also, there is no equality, and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to *A.*, the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to *B.* the remaining acre is then chargeable, in the first instance, with the debt, as against *B.* as well as against *A.*; and if it should prove insufficient, then the acre sold to *B.* ought to supply the deficiency, in preference to the acre sold to *A.*; because when *B.* purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to *A.* In this respect, we may say of him, as is said of the heir, *he sits in the seat of his grantor*, and must take the land with all its equitable burdens; it cannot be in the power of the debtor, by the act of assigning or selling his remaining land, to throw the burden of the judgment, or a rateable part of it, back upon *A.* It is to be observed, that the debt, in this case, is the personal obligation of the debtor, and that the charge on the land is only by way of security; the case is not analogous to a rent charge, which grows out of the land itself, and where every purchaser of distinct parcels of a tract of land charged with the rent, takes it with such a proportionable part of the

*It seems that there is no contribution between purchasers in succession, at different times, of different parts of the estate of a judgment debtor,*

charge. The owners of the land, in that case, all stand equal, and if the whole rent be levied upon one, he shall be eased in equity, by a contribution from the rest of the purchasers, because of the equality of right between them.   (1 *Eq. Cas. Abr. tit. Contribution, A.1.*)

The case of *Gill* v. *Lyon*, (1 *Johns. Ch. Rep.* 447.) was decided upon the principles here laid down.   A mortgagor sold part of the mortgaged premises to *Lyon*, for a valuable consideration, and then the residue was sold under subsequent judgments and executions, and it was held that the mortgage was first to be satisfied out of the lands purchased under the judgments, and that *Lyon* was not bound in equity to bear any proportion of the mortgage debt, unless the residue of the mortgaged premises should not be sufficient to satisfy it.   The subsequent purchaser, under the judgments, took only such right as the mortgagor had in the remainder of the mortgaged premises; and the mortgagor was bound to apply the land he had retained, to discharge the mortgage debt, and not to suffer the debt to fall upon the portion of land he had sold; and in so discharging the mortgage debt, he would have no right of contribution against his own vendee.   The purchaser under him, or under a subsequent judgment, by him suffered or confessed, could not be in any better situation, as it respected the prior purchaser.

To this effect was the observation of *Coke* and of *Hobart*, in *Fleetwood* and *Aston's Case*, (*Hob.* 45.) that as against his own conveyance, the conusee of a statute cannot require contribution.

In the present case, there was no right of contribution existing as between the parties to this suit.   The judgment of *Kimberly* was chargeable upon the remaining property of *Vanderheyden*, purchased by the defendant *D.*, for the benefit of himself and the other three defendants, in *May*, 1812; and that property was, in equity, to be first applied to discharge it.   When *Kimberly's* judgment was about to be enforced in *February*, 1813, against the two lots of the plain-

tiff, there can be no doubt that the plaintiff might, by application to this Court, have had that sale stayed, and have turned the defendants, as owners of that judgment, upon the other lands of $V$. which had been sold under a junior judgment. If these lands had been insufficient, then, indeed, the lots purchased by the plaintiff would have had to supply the deficiency. But if the other lands had been competent, (and of which no doubt can be entertained from the case,) neither $V$., nor his heirs, nor his assignee or vendee, could, as owner of these lands, have had a claim upon the plaintiff for contribution. And there would have been the less colour of equity for such a claim, seeing that the sheriff's sale of these remaining lands of $V$. was expressly made subject to all prior incumbrances. This monition, given at the sale, removes all pretence for surprise or hardship in the case, for the purchasers took with full knowledge of the prior unsatisfied judgment of *Kimberly*.

But the purchasers under that sale have since acquired the ownership of *Kimberly's* judgment, and wielded it with a very inequitable hand. They have, by execution under it, sold the lots of the plaintiff, and purchased them in for their common benefit.

As owners of *Kimberly's* judgment, they have sold the lots of the plaintiff in part satisfaction of it, whereas it ought, in justice and equity, to have been entirely and exclusively satisfied out of the residue of the property of $V$., of which the defendants were themselves the subsequent purchasers. The only question, then, in the case is, as to the proper relief, or indemnity to be afforded to the plaintiff. I do not think it would be expedient to direct a reconveyance of the lots. The sale was made in 1813, and the plaintiff waited four years, before he filed his bill, and the defendants have made expensive improvements on the lots, and agreed to sell one of them to the widow of $V$. and she has been some years in possession under that agreement. It is likewise stated, in the bill, that an application on the part of the plaintiff was made to the defendant $D$., previ-

ous to the sale of the lots, for some arrangement concerning a rateable discharge by each party of *Kimberly's* judgment, and that the proposition was rejected previous to the sale. There was no fraud in the sale, and the legal title passed by it. Under all these circumstances of notice, delay, and change of the property, I am not required, by any established principles of the Court, to disturb the title under the sale. It would be still more advisable, not to do it, if we may give credit to an averment in the answer, (and upon which the proof is silent,) that *Lemuel Hawley* attended at the sale and bid as agent for *Hiram Clowes*, the uncle of the plaintiff, and the beneficial owner.

If a judgment creditor proceeds to sell land sold to a subsequent purchaser, when there is other land of the debtor, sufficient to satisfy the judgment, the court will interfere and stop the sale.

But if the subsequent purchaser knows of the sale of his land, and neglects to apply to the Court, in due season, the sale under the execution will not be disturbed; but the judgment creditor must, by way of indemnity, pay him, at least, the amount for which his land was sold.

The lots were purchased by the defendants for 650 dollars; and the plaintiff has been obliged to contribute that sum towards the satisfaction of *Kimberly's* judgment, when he ought not to have contributed any thing, and that sum, at least, with interest, ought to be refunded. The 650 dollars may not be considered as an adequate price for the lots, for the defendant says, they were worth, when he purchased the residuary estate of *Vanderheyden*, in 1812, the sum of 1200 dollars; but this was to be taken with the condition that the title to them was clear and perfect. The certainty of an unincumbered title is not established; and it appears by the certificates of the clerks, that there were two mortgages, and several judgments, which existed prior to the deed to the plaintiff, and were liens upon those lots. The plaintiff has no just cause to complain, if the sale, in this case, be taken as the value, inasmuch as he did not interpose effectually, (as he might have done,) before the sale, to stay it, and the agent of *Hiram Clowes*, said to be the beneficial owner, did actually attend the sale, and bid a price, inferior to that bid by the defendant *D.* This agent is the person who possessed all the right and interest of the plaintiff to the lots, under a quit-claim deed of the 22d of *July*, 1813, and held the same until the conveyance was vacated as to the two lots in

question, by a decree entered by consent, the 9th of *December*, 1816.

I shall accordingly declare, that the judgment debt of *John Kimberly*, in the pleadings mentioned, was, in equity, chargeable upon the real estate of *Jacob J. Vanderheyden*, not conveyed to the plaintiff by the deed of the 10th of *September*, 1810, and ought to have been collected exclusively out of that estate, whether in the hands of the said *Jacob*, or of his heirs, or assignees, or purchasers under him, or under title derived from him, subsequent to the 10th day of *September*, 1810, and that the lots in the pleadings mentioned as being conveyed to the plaintiff, ought not in equity to have been contributory to the payment of that judgment debt, except so far as that real estate should have been found insufficient for the purpose. And that the sale of the plaintiff's lots, on the 12th of *March*, 1813, as in the pleadings and proofs mentioned, by the owners of the said judgment, in order to satisfy the same, in exemption of the said real estate, was contrary to the principles of equity, and the plaintiff is entitled to have the amount of such sale (and which, under the special circumstances disclosed in the pleadings and proofs, is assumed, as between these parties, to have been the then value of the lots,) refunded, with interest. It is, thereupon, ordered, &c. that the defendants, (except *C. V.* as to whom the bill is dismissed with costs,) pay to the plaintiff, in thirty days after due notice of this decree, 650 dollars, with interest from the 12th of *March*, 1813, and the costs of this suit to be taxed.

*July 5.* This cause was brought to a rehearing by consent, on the question as to the damages.

Re-hearing as
to the damages.

THE CHANCELLOR. The plaintiff contends, that there ought to be an inquiry as to the actual value of the lots, at the time of the purchase by the defendants, and that the price bid by the defendants ought not to be assumed as the test of value. But, under the circumstances of the case, I do not

think that the decree ought to be altered on this point. The deed to the plaintiff was executed to him, while, as the deed expresses it, he was " a student in *Union College* ;" and the reason of the quit-claim deed from him to *Lemuel Hawley*, in *July*, 1813, and then of the decree entered by consent, in *December*, 1816, that the deed should be cancelled only so far as respected these two lots, is not accompanied with any explanation by proof. The answers state, that the deed to the plaintiff from *J. I. V.*, was given at the instance, and for the benefit of *Hiram Clowes* ; and that *Lemuel Hawley*, as the agent of *H. C.*, attended at the sale of these two lots, and bid. The circumstances of the case lead to the inference and belief, that the plaintiff was, originally, only a *dramatis persona*, and that his name was used as a cover for interests not his own ; and that when *L. H.* attended at the sale, he attended as the representative of the owner, whoever that owner might be.

The sale was in *March*, 1813, and the plaintiff is presumed to have known of the sale, and of the agency of *Hawley* ; yet he afterwards voluntarily made a conveyance of the property to him. I have no evidence that the conveyance was unduly obtained, for it was afterwards rescinded by agreement, and then only in part. The notice given by the plaintiff to the defendants, that he intended to question their title, was after the conveyance to *Hawley*, and was, therefore, of no avail. The plaintiff might have stayed the sale before it was made. He waived that, and instead of seeking relief promptly upon the sale, he afterwards conveyed his equitable title to *Hawley*, and waited until 1817, before he commenced this suit. Under these circumstances, the title ought not to be disturbed, nor the improvements affected ; and as incumbrances are shown to have existed on the lot, and are left without explanation, the plaintiff ought to be confined to the price which the defendants gave, and which *Hawley* was not willing to give.

The plaintiff again contends, that as the late wife, now the widow of *J. I. V.* joined in the deed to him, and thereby barred her right of dower, he is entitled to the value of her dower accruing at her husband's death. But I do not apprehend that he could bring any action at law or in equity, for that dower. There is no such action in the books; and her joining in the deed was only a release or bar of her future contingent interest. It was not the alienation of a real, subsisting interest, which can now be the subject of computation or recognition. He took the lots discharged of that claim; and he has no right or interest which can be set up, as distinct from the title to the fee. The right was extinguished and gone forever by the deed, and the title to the lots, in whomsoever it now resides, is held free and discharged from that claim.

The decree, therefore, of the 7th of *May* last, is, in every respect, confirmed.