*TUCKER, P.
I am of opinion that . there is no error in the decree in substituting the appellee to all the rights and remedies of Callison under his original judgment. To the benefit of it he had the clearest right, upon the ordinary and well established principles of the court; nor was it necessary to entitle him to it that he should have been a party to that judgment. It is enough that having paid off the amount of it to Callison, to whom he was bound by the appeal bond, he had a right to demand a cession of every remedy Callison had for the recovery of his demand from his debtor. Among these was the execution by elegit, which reached all the lands of which Mays was seized at the date of that judgment, or at any time afterwards. The decree was therefore right in giving him the benefit of it.
Nor do I think there was any error in charging upon the real estate bound by the original judgment, the damages and costs in the court of appeals. Had an execution by elegit been sued out, it must have included those damages and costs, and must have directed the levy of them, as well as of the amount of the original judgment, by' extent of the lands whereof the defendant was seized at its date. They are but emanations of that judgment, which opens to receive them, in like manner " as the interest of the debt, and the fee for issuing an execution, though accruing subsequent to the judgment, are considered and taken to be part of it or appendages to it. In England, upon a writ of error in the exchequer chamber or in parliament, to a judgment in the king’s bench, the damages are certified to that court, for the purpose of being included in the execution, which can only issue from it, as tne record itself still remains there. Tidd’s Practice 1244; Tidd’s Prac. Forms 539; 14 Vin. Abr. 614; 2 Wms. Saund. 101; z. 2 Lilly’s Entries 571. So here, the affirmance and the award of damages are certified to the court below, whose clerk is directed to calculate the amount, *and the execution issues including it accordingly. The damages and costs in the appellate court thus become appendages to the original judgment; for the judgment of affirmance is no new judgment. It is but a ratification of the original judgment.
Passing over the objections to the shortness of the credit allowed and the supposed rigour of the terms of sale, which I think are without foundation, these being matters of sound discretion, and there being nothing in the record to shew it was exercised improperly, (see Perine v. Dunn, 4 Johns. Ch. Rep. 140, and the act of assembly, 1 Rev. Code, ch. 66, § 41, p. 204, which authorizes a sale for cash- or upon credit,) I proceed to consider whether the appellant had a right to demand that the other vendees and incumbrancers should contribute ratably.
In this case it is clear that had Callison the creditor issued his elegit, it must at law have comprehended the whole of the lands in the hands of all the defendants, and a moiety of the whole, without distinction, would have been extended for the payment of his demand. The plaintiff, who seeks in equity to be subrogated to his rights, cannot fairly be shorn of any por *405 tion of the remedy by the necessity of coming' into equity. He is therefore clearly entitled to charge the whole. But it is no invasion of his rights, to provide that the respective parties should be chargeable as equity would direct, provided he is neither delayed nor deprived of any portion of his security. Of this he does not complain; and indeed, as I understand the decree, he is not delayed; for the whole of the lands are, I take it, to be advertised together, and then sold in immediate succession, until enough is raised to pay the debt. The question then is, whether, as between the defendants, either is entitled to preference, and what should be the order of liability if they are not to be charged pro rata.
*In the case of Conrad v. Harrison et al., 3 Leigh 532, Sisson mortgaged 360 acres of land to Brock. He then mortgaged 285 acres of the same land to Harrison, retaining 75 acres : and he afterwards again mortgaged the whole, including the 75 acres, to Conrad. In this state of the incumbrances, it was decided that as, after the mortgage to Harrison, he had a right to demand that the 75 acres reserved in the hands of Sisson should be first charged by Brock’s mortgage, so, after the mortgage to Conrad, he had a right still to insist on subjecting the same 75 acres to the discharge of the prior mortgage as far as it would go, for his indemnification. This decision rested upon the plain and equitable principle, that' if there be a mortgage on two acres, and the mortgagor sells one of them, the vendee has a right to demand that the other lot retained by his vendor shall be first sold to satisfy the debt; and as this right at once attaches, it cannot be lost by a sale of the other lot to a third person, but he must sit in the seat of his vendor, and be first liable. This principle had been repeatedly acted upon by chancellor Kent, and is also recognized and approved by the whole court in Nailer v. Stanley, 10 Serg. & Rawle 450, 455. By the unanimous judgment of this court, it was approved in the above mentioned case of Conrad v. Harrison et al.
In the case of Beverley v. Brooke et al., 2 Leigh 425, it had, however, been decided that where a judgment is obtained against a debtor, who afterwards aliens his lands to divers alienees by divers conveyances, all the lands‘in the hands of the several alienees are alike liable to the judgment creditor, and must contribute pro rata. This case is different from that of Conrad v. Harrison et al. as it is the case of a judgment; and that difference was adverted to by the judges in the decision of Conrad v. Harrison, as important. It was not expressly overruled, and it cannot be distinguished, I think, from the case at bar. We must therefore either '"overrule it, or, in deferring to it, we must say that the decree in this case is, upon this point, erroneous.
My own opinion is that that case should be reviewed, as one of the most distinguished judges who decided it, expressly renounced it in Conrad v. Harrison, and as it appears that the point was not fully discussed, nor were the respectable authorities produced which have since been brought before the court. (10 Serg. & Rawle 450; Clowes v. Dickinson, 5 Johns. Ch. Rep. 235.) The case was decided by only three judges, one of whom having since distinctly declared that he could not distinguish it from Conrad v. Harrison et al. which he yet decided the other way, it stands now as the decision of only two judges, and so is no longer an authority binding upon us.
Upon reviewing this case, and revolving the principles decided in Clowes v. Dickenson and Conrad v. Harrison et al., I am compelled to say that I think those principles should govern it. The case put by chancellor Kent, of a judgment binding lands, is precisely the case of Beverley v. Brooke et al. and its naked statement exhibits the truth and applicability of the principle laid down by him. The case put by judge Carr, in 3 Leigh 539, 40, is apt and forcible for its illustration. The argument, seems to me unanswerable, that the right of the prior vendee to demand that his vendor’s land should, for his relief, be first charged under an elegit, cannot be taken away without his consent. The consequences of the contrary doctrine are also worthy of the gravest consideration. A debtor -who, after judgment, has sold part of his lands, has every temptation to defraud his grantee of his right to resort to the residue for his relief. He has every inducement to sell that residue and pocket the price, the purchaser holding it free from more than a pro rata charge. It is worth nothing in his own hands, but by selling it to another, it brings profit to himself.
*It is said, indeed, that the law has settled the rights of the alienees. It has declared that all are in aequali jure, and that equity cannot control the law. I do not think so. Admit that all are upon equal footing at law, the question still recurs whether one may not have superior equity to another. This is admitted as it respects the vendor himself. If the elegit takes (as in strictness it must take, and as in fact it usually does take) all the lands, as well the alienee’s as the debtor’s, the alienee has no relief at law, but yet he may have relief in equity against the debtor himself. Why? Because he has superior equity. So if all are alienees, they are all in asquali jure at law, but the prior has superior equity over the latter. He had, before the last alienation, an equitable right to charge the land so aliened. Has he lost that right by the last alienation? Does not the last alienee take subject to that equity? Assuredly, if he purchased with notice of it. He had notice of the judgment, and that it bound his land. If he had notice that there were other lands which were bound by it, and which were previously aliened, he had notice that what he was buying was, in his vendor’s hands, bound for their indemnity. If he did not know this, he must protect himself, if at all, by a plea of his purchase without notice *406 of the equitable rights of prior alienees. This has not been done in the present case. If therefore it be admitted that the last alienee can protect himself at all, it is not upon the principle that he is, in equity, in asquali jure, but upon the ground that he purchased without notice of the equity, and is therefore not affected by it. It is possible that this might protect him: but as to this, I do not think it necessary now to give an opinion. It is enough here to say, that where the last alienee cannot so protect himself, he must be the first to suffer in equity. *The next error assigned is the failure to ascertain whether the rents and profits would not pay the debt in a reasonable time. To this it may be answered, 1. that the defendant, not having asked the enquiry, is presumed to have waived it. Manns v. Flinn’s adm’r, reported ante, p. 93, — 2. That the price of the property (200 dollars) is a sufficient assurance that the rents of half of it would be inadequate even to pay the interest.
Thus far I have been able to discover no error in the decree. But I am of opinion that in some other points it is clearly erroneous. First, the decree is for interest on the aggregate sum of 362 dollars 64 cents, instead of the original sum of 148 dollars 63 cents. Secondly, the equity of redemption in the land conveyed in trust for With-row should have been first sold out and out, —not a moiety only, but the whole. Haleys v. Williams, 1 Leigh 140,—3. If that fell short of satisfying the demand, then the tract conveyed to the appellant should have been next sold, and so in succession, until the debt should be satisfied, or one half in value of the whole lands should be sold. For had the elegit been executed, one half .of each tract would not be extended, but one half of the whole lands, and that half which was last sold should bare the burden. See Harvey v. Woodhouse, Kelyng’s Rep. 3.