## RIGGS v. CLARK.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1896.)

### No. 317.

1. FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.
   A bill which prays for the cancellation of a mortgage for $2,120 states a case within the jurisdiction as to amount of the circuit court, for the purpose of removal, and of which jurisdiction will be retained, though subsequent stipulations as to facts reduce the actual amount in controversy to a sum not over $2,000.

**2.** MORTGAGES—DOUBLE SECURITIES—EXONERATION.

One K., owning two pieces of land, mortgaged the larger, with other property, to C., to secure notes for $2,240, and afterwards, to secure the release of part of the other property, mortgaged the smaller to C., to secure the same debt. K. then conveyed the smaller lot, with covenants of warranty, to one H., from whom it passed, by mesne conveyances, to plaintiff, who had no actual notice of the mortgage to C., though it had been recorded before the conveyance to plaintiff. After the conveyance to plaintiff, K. mortgaged her larger lot to a trustee, to secure notes to C. and another. At C.'s request, the trustee sold under this mortgage, and C. bought the lot, subject to his own first mortgage for $2,240; but, K. having taken proceedings to set this sale aside, C. reconveyed the land to K., with the stipulation that the trustee's sale should go for naught. C. then advertised both the larger and smaller lots for sale under his $2,240 mortgage, fixing the sale of the larger lot two days before the sale of the smaller, and, upon such sale, bought in the larger lot for $400, which appeared to be an inadequate price. Plaintiff then filed her bill to have her lot declared exonerated from the lien of C.'s $2,240 mortgage. *Held:* (1) That plaintiff was not entitled to relief, her only right having been to have the larger lot first applied to the payment of the mortgage, which had been done; (2) that mere inadequacy of price was not sufficient cause for setting aside the sale, and (3) that the first purchase of the lot by C. effected no merger of his title and mortgage which could not be defeated, as against plaintiff, by C.'s subsequent agreement with K.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

The bill in this case was filed in the chancery court of Tennessee for the purpose of obtaining the cancellation of a deed of trust executed to the defendant by a former owner of land now owned by the complainant, Fannie Grey Riggs, which she claimed had been satisfied, and the land exonerated, and for other relief. The case was removed into the circuit court of the United States by the defendant.

The facts, as they appear from the record and the stipulation of the parties, are as follows: On March 6, 1888, Cordelia A. Kershner owned lots 14, 15, and 16 in Block 11, Highland Park, Hamilton county, Tenn., and on that day she subdivided them, and filed a new plat, and sold and conveyed the north 47½ feet of lot 14 of the subdivision to S. K. Strothers. Thereupon Strothers conveyed the same to S. M. Jones, as trustee, to secure a loan of $1,000 advanced by the Merchants' & Mechanics' Building & Loan Association. February 26, 1889, Strothers sold and conveyed said north 47½ feet back to said Kershner, she assuming the $1,000 mortgage. September 23, 1889, Mrs. Kershner sold and conveyed the said north 47½ feet to S. F. Harley, who assumed the $1,000 mortgage. September 24, 1889, Harley sold and conveyed the same to J. J. Coulter, who also assumed the $1,000 mortgage. December 12, 1889, Coulter sold and conveyed the same to complainant for $2,500, of which $1,633 was in cash, and the balance was paid by assumption of the unpaid part of the $1,000 loan. All the above were warranty deeds, except as to the $1,000. This $1,000 complainant afterwards paid. January 5, 1889, Mrs. Kershner executed to T. B. Clark, the defendant, a deed of trust of the south 92½ feet of said lots 14, 15, and 16, and house and lot on East avenue, and house, and lot 17, Cameron Hill, to secure one note for $2,000, and one note for $120, both due January 5, 1890, and one note for $120, due July 1, 1890. July 11, 1890, she executed to D. L. Grayson a deed of trust for said 92½ feet, to secure one note for $1,020 to Dumas, and one note for $236 to the said T. B. Clark. June 17, 1889, Mrs. Kershner executed to said Clark a deed of trust for the north 47½ feet, to secure the same debt as the above deed of trust of January 5, 1889, $120 of which had been paid. This further security was given in pursuance of an agreement to substitute this in place of the East avenue lots included in the former trust deed to Clark, and which lots were released therefrom at the request of Mrs. Kershner. The bill al-

leges that Clark promised this last deed of trust should not be recorded, for the reason that he held other security for the debt, and other notes of Mrs. Kershner, but that in fraud of his promise Clark registered it. November 7, 1891, Clark had Grayson foreclose his deed of trust for the south 92½ feet, and Clark bought it for $800. It was announced at the sale that it was subject to the deed of trust of January 5, 1889, and that the latter was a prior lien for the amount of the debt secured thereby. The bill alleges that the property was worth $3,000. Clark then proceeded to advertise for sale on the 21st of December, 1891, the north 47½ feet, under the deed of trust of June 7, 1889. Mrs. Kershner was dissatisfied with the sale by Grayson to Clark under his trust deed, and with Clark's proposed sale of the north 47½ feet, under the trust deed to the latter, and on December 14, 1891, filed her bill to prevent this sale by Clark, to require him to foreclose his deed of trust of January 5, 1889, for the south 92½ feet, and to make the debt out of that and the East avenue and Cameron Hill lots. On January 9, 1892, the court awarded a preliminary injunction. On March 28, 1892, Clark filed a cross bill; and on October 26, 1892, Mrs. Kershner dismissed her bill, Clark having on September 26, 1892, deeded back to her the land conveyed by the Grayson trust deed, with the stipulation that the trustee's sale should be held for naught, and all things should be restored to their condition previous to Grayson's sale to Clark; the purpose being to vacate and annul the whole proceeding, and restore the parties to their original rights. This the complainant charges was the result of a conspiracy between Mrs. Kershner and Clark, she having become insolvent, and having removed out of the state. The dismissal of the bill was without the knowledge of the present complainant. The bill also alleges that Coulter, Harley, and Mrs. Kershner are all insolvent (and this is admitted); and, if Clark is allowed to proceed with the sale of the north 47½ feet, she will lose the $1,600 paid in cash, and the amount she has paid the loan association. Complainant, at the time of her purchase, had no notice in fact of this deed of trust of June 17, 1889, and was informed by Mrs. Kershner that there was no other incumbrance except that of the loan association. Defendant is now readvertising sale under deed of trust June 17, 1889. It is admitted that the defendant, Clark, is the owner of all the debts secured by the several deeds of trust to him and to Grayson. It is admitted that at the same time (July 10, 1893) Clark advertised the north 47½ feet, under the deed of trust of June 17, 1889, for sale, to be held on the 17th of August, 1893, he also advertised the south 92½ feet under the deed of trust of January 5, 1889, for sale, to be held on August 15, 1893; and on this latter date the 92½ feet was sold for $400, of which $36.66 was credited to costs, and the balance applied on the debt. The prayer of the bill is that both deeds of trust of the 47½ feet be canceled, or that the 92½ feet be decreed the primary fund for the payment of the debt secured thereby; that the deed of trust of the 47½ feet be decreed satisfied, or that the 92½ feet, the East avenue and Cameron Hill lots, be first appropriated to the satisfaction of the debt; and for other and general relief. Upon the hearing in the circuit court the bill was dismissed, and the complainant has appealed.

F. M. Thompson, for appellant.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

Having stated the case as above, SEVERENS, District Judge, delivered the opinion of the court.

The first question to be disposed of is that which arises upon the complainant's contention that the order of removal from the state court, made by the circuit court of the United States, upon the petition of the defendant, was unauthorized and void, for the reason that the matter in controversy did not exceed in value the sum of $2,000, exclusive of interests and costs. In support of this conten-

tion, it is urged by the complainant that, in truth, less than the sum of $2,000 was in controversy, and that that fact was made to appear by the stipulation of the parties in regard to the facts made and filed after the removal of the case, preliminary to the hearing and for the purposes thereof. If it were competent to try the question of jurisdiction thus raised by the test of this stipulation, the complainant's position would seem to be well founded. But it is the well-established rule that the question whether a case is removable or not is to be determined by the claim of the complainant, as shown by the record at the time of filing the petition. It is that only which the court can take cognizance of and base its action upon. Under the practice prescribed by the statute, there is no trial and determination upon extrinsic proof of the question as to how much is the actual value of the matter claimed. Gaines v. Fuentes, 92 U. S. 10; Schunk v. Moline, Milburn & Stoddart Co., 147 U. S. 500, 13 Sup. Ct. 416; Dickinson v. Trust Co., 64 Fed. 895.

Nor is the jurisdiction defeated upon its subsequently appearing upon the trial, or by the complainant's concession, that she was not entitled to so much as was claimed. Equally unfounded is the argument made by the appellee in support of the jurisdiction of the court below, founded, as it is, upon the fact that it is shown by the trust deed of June 17, 1889, that it provided that, in case of suit to enforce collection or protect the security, an attorney's fee should accrue and become a lien upon the property. From this it is argued that the attorney's fee became at once due upon the appearance of the attorney to defend this suit, and, added to the $2,000 of the note for that sum, would make more than the requisite sum, the other note for $120 not being taken into the account. But no mention of any such provision for an attorney's fee, or of any claim for it, appears in the record as it was exhibited at the time of the removal. That appeared later on, when the trust deed was brought into evidence by the stipulation of the parties.

Recurring to the bill filed by the complainant in the state court, it was, among other things, prayed that, upon grounds stated in the bill, "the lien of both of said deeds of trust (referring to those of January 5, 1889, and June 17, 1889, respectively) should be released," "and both of the same be canceled." In the stating part of the bill, it was alleged that the mortgage executed by Mrs. Kershner to the defendant on June 17, 1889, upon the north 47½ feet (to which the plaintiff now claims title), was for the sum of $2,120,—$2,000 in one note, and $120 in another; and there is no allegation of the fact which now appears, that $120 of this has subsequently been paid. It further appeared from the bill that, as the complainant alleged, the defendant claimed the right and was seeking to cast the whole burden of the debt upon the complainant's land. It was alleged in the answer that more than $2,000, besides interest and costs, was due upon this note. The petition for removal also stated that the amount in dispute exceeded $2,000 in value besides interests and costs, and, as we have shown, the pleadings support this averment. It is true that part of the relief prayed by the bill

was for an injunction to restrain the enforcement of the deed of trust of June 17, 1889, by a sale thereunder of the north 47½ feet for the satisfaction of the note of $2,000; but this was incidental to the principal relief sought, and was not the measure of the whole controversy. It is not necessary to inquire in this connection into the status of the other deed of trust executed on January 5, 1889, or the kind of relief sought in reference to it. It is evident that, as the case stood upon the record at the time of the removal, the amount involved was sufficient in that regard to warrant the removal, and give the court below jurisdiction thereon.

No question was raised in regard to the right of removal until after the stipulation was entered into agreeing upon the facts for the purposes of the trial. The fact that at that time such a stipulation was made as is therein recited, "in order to save unnecessary cost and trouble," could not be made to retroact and prove that at the time of the removal the complainant did not claim what in her pleadings she asserted a right to, and upon the ground of which she prayed coextensive relief. Various reasons are likely to occur during the progress of litigation which induce a change in the expectations of the parties, and often, for the saving of cost and trouble, concessions are made and compromises reached. Here the case was removable on account of the diverse citizenship of the parties, provided the dispute involved the sum of $2,000 besides interests and costs. The pleadings show that the requisite amount was in controversy, and furnish sufficient ground for the allegation in that particular in the petition. There is no room for any suggestion that the complainant's claim was collusively or otherwise fraudulently made for the purpose of giving jurisdiction to the United States court, and the consequences of such an incident are not involved. We are therefore of opinion that there was no ground upon which the circuit court should have decided "that the cause was improperly removed," and that the complainant's motion to remand was properly denied. It appears from the bill and the exhibit thereto attached that the defendant was proceeding to sell the land of the complainant under the trust deed of June 17, 1889, for the payment of the $2,000 note, and the interest thereon from January 5, 1891. The case has been argued here by both sides upon the assumption that the interest could not be included in estimating the value of the matter in dispute. We express no opinion upon the correctness of this assumption in a case where interest is stipulated for by the terms of the contract, as distinguished from such interest as may be awarded as damages for the withholding of a sum due, for the reason that we sustain the jurisdiction upon another ground.

Coming, then, to the merits of the case, it is observable that the facts are somewhat complicated; but, gleaning out those which are material and decisive of the questions presented, it will be convenient to consider first the state of things when the complainant purchased from Coulter and acquired the title to the land she claims, being the north 47½ feet, which was on December 12, 1889. It will be seen from the preceding statement of facts that Mrs.

Kershner had, on the 5th day of January preceding, executed a trust deed of the south 92½ feet and other property to Clark, to secure three notes, aggregating $2,240; and on June 17th, in order to obtain a release of some of the other property, she executed a deed of trust to Clark of the north 47½ feet, also to secure two of the above notes, aggregating $2,120, the third for $120 having been paid. On the 23d of the same month, she conveyed, with covenant of warranty, the north 47½ feet to Harley. This, as between Mrs. Kershner and Harley and those succeeding to his rights, had the effect to make the south 92½ feet, the primary fund for the payment of the $2,120. Gill v. Lyon, 1 Johns. Ch. 447; Clowes v. Dickenson, 5 Johns. Ch. 235; Cooper v. Bigly, 13 Mich. 463; 1 Washb. Real Prop. 570. This is the effect of the generally prevailing rule on the subject, with which the decisions in Tennessee are now in accord. Wright v. Atkinson, 3 Sneed, 585; Thompson v. Pyland, 3 Head, 537. These cases appear to overrule the previous decision in Jobe v. O'Brien, 2 Humph. 34. The title to the north 47½ feet, then, devolved by mesne conveyances, with covenant of warranty, to the complainant, December 12, 1889. At the time of her purchase, she had constructive notice of the deed of trust to Clark of June 17, 1889, it having been registered August 23, 1889. The others in the line of title from Mrs. Kershner had like constructive notice at the time of the respective conveyances to them. The complainant alleges that she had no actual notice, and this the defendant admits; but she avers that Clark, when he took the deed of trust of the north 47½ feet, promised Mrs. Kershner that he would not put the instrument on record. This averment is not proven, however, and, if it were, it is difficult to see how the plaintiff could take advantage of it. It was a personal covenant, not running with the land, and, if broken, would render Clark liable only to Mrs. Kershner, for such damages as she could show she had sustained. The complainant therefore acquired title to her land, subject to the burden of the deed of trust to Clark of June 17, 1889, for the security of the two notes for $2,120, the payment of which was secured by a former deed of trust of January 5, 1889, covering other property, and which, by the operation of Mrs. Kershner's warranty deed to Harley, was made in equity the primary fund for the payment of the debt. This was the condition of affairs when, on July 11, 1890, Mrs. Kershner executed a second deed of trust to Grayson of the south 92½ feet, to secure another indebtedness of $1,256. Default having been made in the payment of this latter indebtedness, Grayson proceeded to sell, under his trust deed, the equity of redemption in that description of land, that being all the interest he had power to sell. Clark became the purchaser for the sum of $800. It is claimed that inasmuch as this south 92½ feet had become primarily liable for the whole debt secured by the original trust deed to Clark, to the exoneration of the north 42½ feet, Clark must be deemed to have purchased at the sale such an interest in the land as would remain after its appropriation pro tanto to the satisfaction of the whole debt secured by the first trust deed; that

it was equivalent to an assumption by Clark of that debt if it had belonged to another person; and that, as he was the owner of the debt himself, it was merged and satisfied. This is a more definite statement of the process by which the result contended for is reached than that stated by counsel for the appellant; but such are the grounds upon which the contention might be supported if it were tenable in the circumstances of this case. And it must be confessed there would be much plausibility in it were it not for what supervened. Tice v. Annin, 2 Johns. Ch. 125; Clowes v. Dickenson, 5 Johns. Ch. 235; McKinstry v. Curtis, 10 Paige, 503; Booker v. Anderson, 35 Ill. 66.

Mrs. Kershner, feeling herself aggrieved by the sale, took proceedings to have it set aside. She had such an interest in the subject, by reason of her ownership of the land sold, and her personal obligation secured by the deed of trust, as gave her a right to challenge the sale if there was reason for it. She was not bound to associate the complainant with her in the controversy unless she chose to do so, nor was such controversy subject to the domination of another. If the complainant had any rights to be protected, she was at liberty to pursue the proper remedy. There is an allegation in the bill that Mrs. Kershner undertook by that suit to protect the complainant, but there is no proof of such an agreement. The matter was compromised by an arrangement consented to by the parties concerned in the sale by a complete revocation of the transaction and a replacement of the whole matter in statu quo. The complainant had nothing to do with the sale. Her rights were not affected by it, and she had no ground on which she could dispute the right of the parties whose interests were directly involved to seek and to award redress for any wrong complained of, and which did not impair any right possessed by her at the time of the transaction which they undid. The complainant alleges in her bill that:

"It was announced at the said sale, by the said trustee and the said Clark, that the said property was being sold subject to the said first deed of trust herein, and that the same was a prior lien to the amount of said debt and interest. This was done to prevent said property selling for its real value, and in order that the said Clark might get the same for about one-fourth of its actual value, it being worth at least three thousand dollars ($3,000)."

As the complainant was not bound by what was done at the sale, if it infringed her rights, so neither did she acquire any vested right thereby. She retained her original rights, and was in the same position as before to vindicate them. All that could be claimed for her was that she had the right in equity to have the land covered by the first trust deed to Clark exhausted before recourse should be had to the land owned by her. But this right appears, from the admissions of the parties, to have been conceded to her. The defendant, Clark, at the same time he advertised the complainant's land for sale under the trust deed of June 17, 1889, also advertised the other land for sale under the trust deed of January 5, 1889, and fixed the day of sale of the latter two days earlier than the former. There would be no doubt that, if both parcels had been included in

one mortgage, the sale of both could have properly been advertised for the same day. There is no substantial difference between the case supposed and the present. The whole question is one which concerns the order of sale. In both cases the debt would be satisfied and the power extinguished if the property first exposed to sale brought enough to pay the debt. It further appears from the stipulation of the parties that on the 15th of August, 1893, the south 92½ feet, being the land included in the first trust deed to Clark, was in fact sold pursuant to the advertisement for $400. It would seem that that was much less than its value, but that was a matter which the complainant was bound to see to. There is nothing to show, other than the small price which the land brought, that the land was not fairly sold, and that of itself is not sufficient to impeach it. The proceeds have been credited upon the debt. It may be that the complainant may suffer a misfortune from having too large a burden of the debt fall upon her land; but, if so, it is in consequence of her own negligence, and she has no right to complain.

We have not lost sight of the fact that it is stated in the bill that the first trust deed to Clark included a house and lot on Cameron Hill, and it so appears from the trust deed which is made part, by reference, of the stipulation of the parties in regard to the facts. There is nothing to show whether that was ever released or not, or whether that property has any substantial value. At all events, the assignment of errors takes no notice of it, nor have counsel for the appellant, in their brief or argument, made any reference to it. In these circumstances, we shall also disregard it.

The decree of the circuit court must be affirmed.