HAYWARD v. NORDBERG MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. February 8, 1898.)

No. 483.

1. REMOVAL OF CAUSES—JURISDICTIONAL AMOUNT—DEMAND.
In determining whether the matter in dispute exceeds $2,000, the principle to be applied is that, where the law gives no rule, the plaintiff's demand, unless colorable, must furnish one, but where the law does give the rule, the legal cause of action, and not the plaintiff's demand, must be regarded.

2. SAME—COLORABLE ENLARGEMENT.
Although, where the law gives no rule, the amount of damages laid in the declaration is not conclusive, yet, if there might be a recovery for the necessary amount, jurisdiction cannot be defeated, under the act of March 3, 1875, unless the court find, as a matter of fact, that the amount of damages stated in the declaration was colorable.

3. SAME.
What would be a colorable enlargement of a demand, where the law gives no fixed rule, depends on the facts of the particular case.

4. SAME.
Since a plaintiff cannot remove a suit to the federal court on the ground of diverse citizenship, the demand in his declaration in the state court for a sum exceeding $2,000 cannot constitute a colorable enlargement for the purpose of establishing federal jurisdiction.

5. SAME.
In order to warrant a finding, under the act of March 3, 1875, § 5, that a removed suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of the circuit court, it must be based upon facts distinctly appearing on the record, and creating a legal certainty of the conclusion.

6. SAME—ADDITIONAL COUNTS—QUANTUM MERUIT.
The fact that the first count of a declaration is for an agreed compensation amounting to only $2,000, or less, does not defeat a removal to the federal court, if there are other counts so framed that, in case of failure to establish the specific agreement, it is legally possible for plaintiff to recover a sum exceeding $2,000 as the reasonable value of the services rendered.

7. SAME—SUBSEQUENT CONCESSION BY PLAINTIFF.
Where, at the time when defendant removes a cause, the record shows a dispute or controversy within the jurisdiction of the federal court, that jurisdiction cannot be defeated by any subsequent concession by the plaintiff.

8. LOBBYING CONTRACTS—PUBLIC POLICY.
All indirect or private methods of influencing public officials in respect to public business intrusted to them are immoral, and against public policy, and contracts to compensate agents or attorneys for rendering such services will not be enforced by the courts.

In Error to the Circuit Court of the United States for the Western District of Michigan.

This was an action commenced by summons in the circuit court for the county of Kent, state of Michigan, by John W. Hayward, a citizen of Michigan, against the Nordberg Manufacturing Company, a corporation of the state of Wisconsin. After the defendant company had, by attorney, entered an appearance, a declaration was filed, and copy served. The ad damnum named in the writ of summons was $5,000. The declaration included three counts. The first was a special count upon a contract, by which the plaintiff was employed to aid and assist the defendant company, who were manufacturers of pumping machinery, in selling one of their horizontal pumps to the city of Grand Rapids, upon an agreement to pay plaintiff a commission of 5 per cent. upon the purchase price obtained from said city. Plaintiff averred that under said special

employment he had aided and assisted in making sale of one of the pumps of their manufacture to said city for the price of $33,500, wherefore plaintiff was entitled to recover from the defendant, for his services, the sum of $1,675, and concluded with the averment that defendant had failed and refused to pay same, "to plaintiff's damage $5,000." The second count avers an indebtedness to the plaintiff in the further sum of $5,000 "for work and labor, care and diligence," done and performed for the defendant, as factor and agent, "in and about the sale of a certain pump to the said city of Grand Rapids, for said defendant, at the special instance and request of the said defendant, and, being so indebted, the said defendant, in consideration thereof, * * * undertook and promised the said plaintiff well and truly to pay to said plaintiff the said sum of money," etc.; and, though often requested, had not paid the whole, or any part, "to plaintiff's damage of $5,000." The third count is another common count averring an indebtedness of $5,000 for goods sold, money lent at its request, "and a like sum of money due plaintiff on a contract for the sale of a certain pump," etc., and a like sum for commissions due from defendant in effecting the sale of a certain pump, and avers a promise to pay said sum of $5,000, and request and refusal, "to plaintiff's damage," etc. After the filing of this declaration the defendant duly removed the cause into the United States court. Thereupon the plaintiff filed the record, and voluntarily filed what, under Michigan practice, is called a bill of particulars, and served copy of same on the defendant. Thereupon the plaintiff entered a motion to remand the suit to the state court, upon the ground that the amount in dispute was less than $2,000. This motion was based upon this bill of particulars and an affidavit by the plaintiff averring that the real matter of dispute never exceeded $1,675, and interest for a few months, being "5 per cent. commission on $33,500, as commission on the sale of certain pumping machinery to the city of Grand Rapids." This motion was denied. Thereupon, after issue joined, the cause came on to be heard by the court and jury. Pending the trial, and after the plaintiff's evidence had been heard, the motion to remand was renewed, upon the ground that the amount in dispute had never been more than $1,675. This was again overruled. At the conclusion of all of the plaintiff's evidence, the court directed a verdict for the defendant, upon the ground that the services for which the plaintiff sought compensation "were services rendered in the solicitation of a public board and its officials, in the procuration of a contract in which he and his employers were directly interested," and that from the plaintiff's own case it was made to appear "that no disclosure was made of the fact that he had an interest in the subject-matter concerning which these representations were made, and that he withheld information from the public officials of the fact that he was interested in the transaction which he sought to accomplish." The plaintiff has assigned as error the refusal of the court to remand the cause to the state court, and the direction to find for the defendant.

Wm. Wisner Taylor, for plaintiff in error.
Butterfield & Keeney, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, after making foregoing statement of facts, delivered the opinion of the court.

The preliminary question as to the jurisdiction of the circuit court must be decided against the plaintiff in error. Under the common counts of the declaration filed in the state court there was no rule of law by which the plaintiff was prevented from recovering a judgment for any sum within the ad damnum clause of the writ of summons, which was $5,000. The declaration disclosed most clearly a cause of action within the jurisdiction of the circuit court, inasmuch as the demand, under the common counts, was $5,000, a sum in excess of the amount necessary to give jurisdiction to that court. The suit was, therefore, one which was removable, diversity of citizenship existing.

Barry v. Edmunds, 116 U. S. 550, 6 Sup. Ct. 501. But it is said that under the act of March 3, 1875, it is the duty of the court to look behind the pleadings, and if, after a removal upon the prima facie jurisdiction appearing from the face of the plaintiff's declaration, it should appear to the satisfaction of the court that the suit did not really and substantially involve a dispute or controversy within the jurisdiction of the circuit court, the court should remand the cause to the court from which it was removed. Where a suit originates in a court of the United States, the question of whether it really and substantially involves a dispute exceeding $2,000 generally depends upon the ad damnum clause in the summons, and upon the facts stated in the plaintiff's declaration, though, since the act of 1875, these tests are not conclusive.

In Barry v. Edmunds, 116 U. S. 550–560, 6 Sup. Ct. 506, Justice Matthews said:

"It is true, indeed, that in some cases it might appear as matter of law, from the nature of the case as stated in the pleadings, that there could not legally be a judgment recovered for the amount necessary to the jurisdiction, notwithstanding the damages were laid in the declaration at a larger sum."

The learned justice then cites the early case of Wilson v. Daniel, 3 Dall. 401–407, where Chief Justice Ellsworth said that:

"The nature of the case must certainly guide the judgment of the court, and whenever the law makes a rule that rule must be pursued. Thus, in an action of debt on a bond for £100, the principal and interest are put in demand, and the plaintiff can recover no more, though he may lay his damages at £10,000. The form of the action, therefore, gives in that case the legal rule. But in an action of trespass, or assault and battery, where the law prescribes no limitation as to the amount to be recovered, and the plaintiff has a right to estimate his damages at any sum, the damage stated in the declaration is the thing put in demand, and presents the only criterion to which, from the nature of the case, we can resort in settling the question of jurisdiction. The proposition, then, is simply this: 'Where the law gives no rule, the demand of the plaintiff must furnish one; but where the law gives the rule, the legal cause of action, and not the plaintiff's demand, must be regarded.'"

Touching the effect of the act of 1875 upon the rule stated in Wilson v. Daniel, Justice Matthews, in the case cited, said:

"The amount of damages laid in the declaration, however, in cases where the law gives no rule, is not conclusive upon the question of jurisdiction; but if, upon the case stated, there could be a recovery for the amount necessary to the jurisdiction, and that amount is claimed, it would be necessary, in order to defeat the jurisdiction, since the passage of the act of March 3, 1875, for the court to find, as a matter of fact, upon evidence legally sufficient, that the amount of damages stated in the declaration was colorable, and had been laid beyond the amount of a reasonable expectation of recovery, for the purpose of creating a case within the jurisdiction of the court. Then it would appear to the satisfaction of the court that the suit 'did not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court.'"

What would be a colorable enlargement of a demand, where the law gives no fixed rule, would depend upon the facts of the particular case. Touching the necessity of legal evidence of such a fraudulent swelling of the amount of a plaintiff's demand, the court, in this same case of Barry v. Edmunds, said that the order of a circuit court dismissing a cause for that reason would be reviewable upon a writ of error, and added:

"In making such an order, therefore, the circuit court exercises a legal, and not a personal, discretion, which must be exerted in view of the facts sufficiently proven and controlled by fixed rules of law. It might happen that the judge, on the trial or hearing of a cause, would receive impressions amounting to a moral certainty that it does not really and substantially involve a dispute or controversy within the jurisdiction of the court. But upon such a conviction, however strong, he would not be at liberty to act, unless the facts on which the persuasion is based, when made to distinctly appear on the record, create a legal certainty of the conclusion based on them. Nothing less than this is meant by the statute when it provides that the failure of its jurisdiction on this account 'shall appear to the satisfaction of the circuit court.' "

The cases involving a colorable enlargement of the amount claimed as in dispute for the purpose of bringing the matter within the appellate jurisdiction of the supreme court are in point upon this question. Lee v. Watson, 1 Wall. 337; Hilton v. Dickinson, 108 U. S. 165–174, 2 Sup. Ct. 424; Bowman v. Railway Co., 115 U. S. 611, 6 Sup. Ct. 192.

In Hilton v. Dickinson, just cited, the court said:

"It is undoubtedly true that until it is in some way shown by the record that the sum demanded is not the matter in dispute, that sum will govern in all questions of jurisdiction; but it is equally true that, where it is shown that the sum demanded is not the real matter in dispute, the sum shown, and not the sum demanded, will prevail."

Neither is it admissible to determine the question of the existence of a dispute involving the necessary jurisdictional amount by an inquiry in the nature of a demurrer to the case stated in the pleadings. That a good defense appears from the facts stated to the whole or to a part of the demand does not affect the jurisdiction of the court, unless, of course, the nature of the claim stated is so manifestly fictitious as to make it legally certain that the amount of the demand is alleged simply to create a jurisdictional sum for the purpose of creating a case within the jurisdiction. The case of Schunk v. Moline, Milburn & Stoddart Co., 147 U. S. 504, 13 Sup. Ct. 416, was a suit to recover $2,194.13, of which $530.09 was due, and the rest, as shown on face of declaration, was not due. The jurisdiction of the court to entertain the suit was challenged by demurrer, upon the ground that, as there could be no recovery of the amount not due, the sum really in dispute was under $2,000. The jurisdiction was maintained, the court, among other things, saying:

"It matters not that, by the showing in the petition, part of this sum was not yet due. Plaintiff insisted that it had a right to recover all. That was its claim, and the claim which was disputed by the defendant. Suppose there were no statute in Nebraska like that referred to, and the plaintiff filed a petition exactly like the one before us, excepting that no attachment was asked for, and the right to recover anything was challenged by demurrer, would not the matter in dispute be the amount claimed in the petition? Although there might be a perfect defense to the suit for at least the amount not yet due, yet the fact of a defense, and a good defense, too, would not affect the question as to what was the amount in dispute. Suppose an action was brought on a nonnegotiable note for $2,500, the consideration for which was fully stated in the petition, and which was a sale of lottery tickets, or any other matter distinctly prohibited by statute; can there be a doubt that the circuit court would have jurisdiction? There would be presented a claim to recover the $2,500; and, whether that claim was sustainable or not, that would be the real sum in dispute. In short, the fact of a valid defense to a cause of action, although apparent on the face of the petition, does not diminish the amount that is claimed, nor determine what is

the matter in dispute; for who can say in advance that that defense will be presented by the defendant, or, if presented, sustained by the court? We do not mean that a claim evidently fictitious, and alleged simply to create a jurisdictional amount, is sufficient to give jurisdiction."

We come now to the application of the act of 1875, as construed by the cases cited, to the facts of the case here involved. This cause did not originate in the circuit court, but was started in a circuit court of the state of Michigan, and removed into the circuit court of the United States, upon the ground that the controversy involved a sum in excess of $2,000, and was a case wherein the necessary diversity of citizenship existed to entitle the defendant to remove the cause into a court of the United States. The plaintiff's writ of summons laid his damages at $5,000, and his declaration, which was filed before the removal, stated a case upon which there could be a legal recovery for the amount necessary to the jurisdiction. Under the common counts in the plaintiff's declaration it was legally competent for him to prove goods sold, money lent, or services rendered, and that the defendant had promised to pay the sum of $5,000. So, if the plaintiff was unable to make out a contract to pay him a commission of 5 per cent. upon the price of the pumping engine sold through his aid and assistance, but did show that he had rendered valuable services at the instance and request of the defendant in making such sale, there was no legal reason why he might not, if the evidence should justify, recover a judgment for the whole amount of his claim or demand of $5,000. The doctrine that where the plaintiff has done work and labor under a contract which he has not fully performed, and therefore sues for a quantum meruit, he shall not recover in excess of the contract price, has no application if, in fact, there was no stipulation as to the price or compensation. The first count of the plaintiff's declaration was for an agreed commission. But the other counts were so framed that, if no agreed stipulation for a definite commission was established, it was legally possible for him to have recovered a much larger sum as the reasonable value of the services rendered. The amount in dispute and claimed by the plaintiff when the case was removed was, therefore, within the jurisdiction of the court, and the cause, therefore, removable under the statute. But after the removal of the cause the plaintiff filed, voluntarily, a bill of particulars, consisting of an account against the defendant for $1,675 and interest, due as a commission of 5 per cent. on the sale for $33,500 of one of defendant's pumping engines to the city of Grand Rapids. At the same time he filed an affidavit, and certain correspondence with the defendant, in which he averred that he had never claimed from the defendant any other or greater sum than a commission amounting to $1,675. This, it was insisted, constituted legal evidence that the matter in dispute did not exceed $1,675, and that the controversy was not, therefore, within the jurisdiction of the court. The only legal effect of his voluntary bill of particulars was to cut down the amount of the claim in dispute to a sum less than $2,000. It was equivalent to a confession that he was not entitled to claim so much as was claimed

by his declaration. Such a concession will not operate to defeat a jurisdiction which had already attached.

In Riggs v. Clark, 37 U. S. App. 626–632, 18 C. C. A. 242, and 71 Fed. 560,—a case decided by this court,—it was sought to defeat the jurisdiction of the circuit court in a case which had been removed into that court from a state court as a consequence of a stipulation by the parties, after the removal, as to the facts of the case for the purpose of a hearing, from which it appeared that the amount in dispute was really less than $2,000. The jurisdiction was maintained upon the ground that the question whether a case is removable or not is to be determined by the claim of the plaintiff at the time of the removal. Where a cause is removed to the circuit court of the United States by a defendant, and the record at the time of removal shows a dispute or controversy within the jurisdiction of a circuit court in respect to amount, the jurisdiction over that case cannot be defeated by the subsequent concession of the plaintiff that the amount he claimed was less than that he had stated in pleadings filed before such removal. Neither would such concession be strengthened by any stipulation as to the real facts of his demand, nor by any other form of concession made after removal. Riggs v. Clark, 37 U. S. App. 626, 18 C. C. A. 242, and 71 Fed. 560; Fuller v. Insurance Co., 37 Fed. 163; Peeler v. Lathrop, 2 U. S. App. 40, 1 C. C. A. 93, and 48 Fed. 780; Waite v. Insurance Co., 62 Fed. 769; Henderson v. Cabell, 43 Fed. 257–259. The plaintiff started his suit in a state court, and then filed his declaration demanding $5,000. As he could not remove his case to a court of the United States, there was no colorable enlargement of his demand *for the purpose* of making a case within the jurisdiction of a circuit court of the United States. So, if his services were rendered upon no agreement as to the amount of his compensation, he was at liberty to estimate their value at any sum he saw fit, and lay his ad damnum accordingly. That he had, before suit, estimated his services at a smaller sum, or claimed a less sum as due under an express agreement, furnishes no legal reason why he might not, if the existence of the contract was denied, sue both upon the agreement he claimed and in assumpsit for a larger sum. Whatever the facts of the plaintiff's claim, and however he may have stated his demand before commencing suit, he voluntarily chose to begin a suit upon a claim which, in amount, was within the jurisdiction of the circuit court, and therefore removable. Whether the facts would or would not support his claim as stated, or for the amount he demanded, is a matter of no moment. Jurisdiction to hear and determine that claim existed in the circuit court to which the cause was removed, and the jurisdiction thus acquired could not be defeated by any subsequent amendment of his pleadings, bill of particulars, or other form of concession as to any part of his demand. The case is not one of colorably enlarging a demand for the purpose of giving jurisdiction to the courts of the United States, for the plaintiff could not have entertained any such purpose.

This brings us to the merits of the case. The claim of the plaintiff was to recover compensation for services rendered to the defendants,

at their instance and request, in aiding in the procurement of a contract for the sale of a pumping engine of their make to the city of Grand Rapids. For such service the plaintiff's evidence tended to show an agreement to pay him a commission of 5 per cent. upon the price at which a sale should be made. The plaintiff was an ex-member of the city council, but at the time of his employment held no official position. He was an old citizen of Grand Rapids, and superintendent of an electric lighting and power company. He had had a great deal of experience in dealing with the council and public officials, and was charged with looking after the legislation affecting the business and franchises of the electric light company. He was not a machinist, though he knew something of engines, one of the defendant's make being in use by his company. There was a great deal of competition between the makers of pumping engines for the contract to furnish Grand Rapids with new pumping machinery for the city waterworks, but the principal rivalry was with the Holly Company. The character of the services rendered by plaintiff, as shown by his own evidence, consisted altogether in personal solicitation of the members of the city council and board of public works. We set out portions of his testimony. Being asked if he made known his agency, he answered:

"I don't think I ever told any alderman or any other city official that I was the agent of that company in any way. Q. In other words, you thought that, so far as the people whom you talked to,—you judge they simply took it as your opinion of a good engine? A. That is the idea of it, sir. Q. They knew that you knew something about engines, and had been using this engine? A. Yes, sir. Q. And you judge they took it as your disinterested opinion? A. Yes, sir."

Concerning the way in which he approached these public officials, he was asked this question:

"Q. Then all your work that you did was done by interviews—personal interviews—with the members of the common council and the board of public works? A. Yes, sir."

When asked touching what was said by him in these personal interviews, he said he talked with them wherever he could find them; told them of the Nordberg engine used by his electric company, and that it was, in his opinion, "an elegant machine," and "that Mr. Nordberg was a fine mechanic; that he could build a pump,—in my opinion, a good one; that the pump they made was better for the city than the Holly pump; the construction of it was better." He never appeared before the council or before any committee, and advanced the Nordberg Company's efforts to get the contract solely by personal arguments of the kind indicated. There was no evidence of any effort to corruptly influence the official action of the city council.

We do not deem it material that Hayward did not affirmatively deny his agency while acting for the Nordberg Company. Nor is it important that there was no affirmative evidence that he was to practice such concealment as part of the service to be rendered. The fact was that he did not divulge his interest, and ostensibly occupied the character of a citizen having no interest other than the public good. He intended that the opinions expressed by him should have the weight of a disinterested opinion, and to thereby mislead the

judgment of the officials he sought to influence. This was to add deceit to the other evils incident to the private solicitation of public officials, which, in itself, is contrary to public policy. Marshall v. Railroad Co., 16 How. 314, 334, 335. It is the highest duty of the courts to place the seal of their condemnation upon all subterranean methods of influencing legislation or procuring public contracts. It is not necessary that it shall appear that actual corruption was resorted to, or that it was contemplated. When it is sought to secure, through the court, compensation for procuring legislation, or securing public contracts, through any other than the most honest, open, and public means, the court will repel such a suitor, and lend no assistance to the enforcement of such engagements. All indirect methods of influencing public officials in respect to public business intrusted to them are immoral, and tend to contaminate and corrupt the integrity of our social and political institutions. Concerning such methods of procuring legislation, the supreme court, in Marshall v. Railroad Co., 16 How. 314, 334, said:

"Legislators should act from high considerations of public duty. Public policy and sound morality do, therefore, imperatively require that courts should put the stamp of their disapprobation on every act, and pronounce void every contract the ultimate or probable tendency of which would be to sully the purity or mislead the judgments of those to whom the high trust of legislation is confided. All persons whose interests may in any way be affected by any public or private act of the legislature have an undoubted right to urge their claims and arguments, either in person or by counsel, professing to act for them, before legislative committees, as well as in courts of justice. But where persons act as counsel or agents, or in any representative capacity, it is due to those before whom they plead or solicit that they should honestly appear in their true characters, so that their arguments and representations, openly and candidly made, may receive their just weight and consideration. A hired advocate or agent, assuming to act in a different character, is practicing deceit on the legislature. Advice or information flowing from the unbiased judgment of disinterested persons, will naturally be received with more confidence, and less scrupulously examined, than where the recommendations are known to be the result of pecuniary interest, or the arguments prompted and pressed by hope of a large contingent reward, and the agent 'stimulated to active partisanship by the strong lure of high profit.' Any attempts to deceive persons intrusted with high functions of legislation, by secret combinations, or to create or bring into operation undue influence of any kind, have all the injurious effects of a direct fraud on the public."

The general doctrine of this case has been many times applied and approved. Tool Co. v. Norris, 2 Wall. 45, 55; Oscanyan v. Arms Co., 103 U. S. 261; Trist v. Child, 21 Wall. 441; City of Findlay v. Pertz, 31 U. S. App. 340, 358, 13 C. C. A. 559, and 66 Fed. 427. What is said in these cases touching contracts for the procurement of legislation from congress or state legislatures, or of contracts from heads of departments, national or state, applies with equal force to municipal councils and other municipal officials. Indeed, the very nearness of these smaller bodies of public officials to the people, makes it all the more important that every contract shall be condemned, the ultimate tendency of which would be to sully the purity or mislead the judgment of those nearest the source of all political power. The judgment must be affirmed.