JUNE TERM, 1863.          241

The State of Wisconsin vs. Titus et al.

STATE OF WISCONSIN VS. TITUS and others.

Where different portions of mortgaged property have been subsequently alienated at different times by the mortgagor, they are subject to sale, on a foreclosure of the mortgage, in the inverse order of alienation.

One of three lots mortgaged to the state was afterwards mortgaged to F. The other two were then mortgaged to T. F.'s mortgage was subsequently foreclosed, but no sale made; and W. purchased the equity of redemption in the lot covered by it. An action was afterwards commenced to foreclose the mortgage to the state, pending which T. purchased F.'s foreclosure judgment. *Held*, that W , by purchasing said equity of redemption, acquired a right, as against T., to have the lots covered by the mortgage of the latter sold first on a foreclosure in favor of the state, and that this right was not affected by T.'s subsequent purchase of F.'s judgment.

A recorded deed or mortgage of a portion of a tract of land covered by a prior mortgage, is *notice* to any subsequent purchaser or mortgagee of the balance of such tract, that the grantee in such recorded deed or mortgage has an equitable interest in such balance, to have it first charged with the payment of the prior mortgage.

APPEAL from the Circuit Court for *Racine* County.

The case is stated in the opinion of the court. The defendant *Williams* appealed.

*Paine & Millet*, for appellant.

*Strong & Fuller, contra.* [No brief on file.]

*By the Court*, PAINE, J. This action was brought to foreclose a mortgage given to the state for the purchase money of school lands. The appeal presents a contest between the defendants *Williams* and *Taylor*, who were subsequent purchasers of portions of the mortgaged premises, as to which was entitled to have the land of the other sold first. The facts material to this question are as follows. After this mortgage to the state, the first conveyance of any portion of the property was of lot 11 in block 2, which was mortgaged to French to secure the payment of five hundred dollars. This mortgage was foreclosed by French, and a judgment rendered in his favor, as the owner of which he was made a defendant in this suit. The next conveyance was of lots 3 and 4 in block 10, which, together with other lands, were mortgaged to the defendant *Taylor* to secure

three thousand and five hundred dollars. After this the defendant *Williams* purchased the equity of redemption in lot 11, covered by the French mortgage.

It further appeared that after this suit was begun, the defendant *Taylor* had become the owner of the French foreclosure judgment, and also that he had foreclosed his own mortgage for thirty-five hundred dollars, and that after a sale of the lands covered by it he had a judgment for deficiency of seven hundred and sixty-three dollars against the defendants *Titus*, the mortgagors, which judgment, however, was rendered after the purchase of lot 11 by *Williams*.

Upon these facts *Taylor* claims the right to have lot 11 sold to satisfy the balance due the state, before lots 3 and 4, which were covered by his mortgage. The counsel for the appellant denied this right, and devoted his whole argument to show that such a right could not be derived from *Taylor's* judgment for a deficiency, inasmuch as that judgment was rendered after the *Tituses* had sold the equity of redemption in lot 11 to *Williams*, so that it never became a lien on that lot. But this argument seems to be based upon a misapprehension of the ground upon which the principle of selling lands, in foreclosure cases, in the inverse order of subsequent alienations, has been established. That right rests entirely upon the priority of interest acquired in the tract covered by the common mortgage. Thus, A owns a tract of land and mortgages it to B; C afterwards, desiring to purchase a portion of it, examines the title, and being satisfied that the remainder of the land is of sufficient value to satisfy B's mortgage, he buys, knowing that as against A he can compel such remainder to be first sold on a foreclosure. This right as against A is very clear and universally admitted. And then, in order to establish the doctrine under consideration, it is held that whoever afterwards buys any part of that remainder from A, with knowledge of C's conveyance, takes it subject to its liability to be sold before C's portion to satisfy the prior common mortgage.

This equity, as between such subsequent purchasers, has sometimes been denied, and it has been contended that they should bear the common burden in proportion to the values of their respective parts.   But the rule has become well establish- ed; it has been frequently acted on by this court, and notwith- standing any criticism upon it  that has fallen under our ob- servation, we think it rests upon solid and satisfactory grounds. The right of the first purchaser as against his vendor, being con- ceded, it seems necessarily to follow  that no subsequent pur- chaser from that vendor, knowing of this right, should be allow- ed to defeat it.

If then *Taylor* has any right, as against *Williams*, to have lot 11 sold first, it grows not out of his judgment for a deficiency on the foreclosure of his own mortgage, but out of the fact that he acquired his interest in lots 3 and 4 before *Williams* acquired his in lot 11.   If the French mortgage was out of the case, then his right would be clear.   As he had acquired an interest in lots 3 and 4 before *Williams* purchased lot 11, the latter would have to be first sold.   But the existence of that mortgage, as an outstanding incumbrance on lot 11, made pri- or to any interest acquired by *Taylor*, seems to be a fact that cannot be overlooked in determining the rights of these de- fendants.   What effect should be given to it is a question which has occasioned us considerable difficulty, which has been increased by the peculiar fact that the foreclosure judg- ment on that mortgage is now owned by *Taylor* himself.   But we have come to the conclusion that this mortgage created an equity in favor of lot 11 to have the balance of the land cov- ered by the state mortgage sold first, and that this equity is available to the defendant *Williams* as the owner of that lot, notwithstanding the mortgage interest out of which it arises is now owned by *Taylor*.   This conclusion has been reached in view of the following considerations.

First, that this mortgage created such an equity will of course be conceded, as that necessarily follows from the

principle already discussed, and upon which *Taylor* relies.

If French still owned the judgment in his favor, he would have the right, as against *Taylor*, to have the lots covered by *Taylor's* mortgage sold before lot 11. And in that event *Williams*, as the owner of the equity of redemption in lot 11, would have received the benefit of the equitable right of French. So if *Williams* had paid the amount due on French's mortgage, or had purchased his judgment instead of *Taylor*, it being for his interest not to have the estates merge, a court of equity would undoubtedly have allowed him to avail himself of the equity growing out of that mortgage, to have the balance of the land first sold. This being so, although the fact that *Taylor* now owns that mortgage interest might seem at first sight to change the result, yet we think it ought not to have that effect, for the reason that the amount of that interest must come out of the lot, and that is precisely what *Taylor* seeks to accomplish. He himself alleges that lot 11 is of sufficient value to pay the judgment on the French mortgage and also the balance on the state mortgage. If the lot does this, that is if it pays to *Taylor* the amount of the French foreclosure judgment, then the owner of the lot ought to be able to avail himself of the equity growing out of that judgment, or interest represented by it, to have the other lands sold first. He should then be considered as in the same position as though he had paid the mortgage to French, or had purchased the judgment. And if this is so, it would seem that *Taylor* should not be allowed, by purchasing that judgment and holding it while this state mortgage is being foreclosed, to defeat an equity in favor of lot 11, as against other lots covered by the state mortgage, and then turn round and make that lot pay this judgment. If the lot is to bear the burden of the French mortgage, its owner should be entitled to any equities created in its favor by the existence of that mortgage.

There is no other proof of notice of the equities growing out of these several conveyances than what arose from their

being recorded. But if this right of having lands sold in foreclosure in the inverse order of alienation is to exist at all, it must be held to be within the protection of the recording act. We have found very little in the books upon this subject. But in the case of *La Farge Insurance Co. vs. Bell*, 22 Barb., 54, the question is very ably discussed, and it is held that the purchaser of a portion of a tract covered by a mortgage acquires not only a title to the portion so purchased, but also an equitable interest in the balance, to have that first charged with the payment of the mortgage, and that, therefore, the record of his deed is notice of his right to any purchaser of a portion or the whole of such balance. Sec. 35, chap. 86 of our statutes, is substantially like that on which this decision was made.

The judgment must be modified so as to direct a sale of the remainder of the tract before lot 11, at the cost of the defendant *Taylor*, and the case remanded to be enforced accordingly.