**JACKSON v. FINANCE CORPORATION OF WASHINGTON et al.**

**SAME v. KAUFMAN et al.**

Nos. 4905, 5080.

Court of Appeals of District of Columbia.

Argued March 4, 1930.

Decided April 10, 1930.

Rehearing Denied May 29, 1930.

E. Hilton Jackson, F. B. Rhodes, W. E. Richardson, and W. W. Millan, all of Washington, D. C., for appellant.

Morris Simon, Lawrence Koenigsberger, Eugene Young, and Selig C. Brez, all of Washington, D. C., for appellees.

VAN ORSDEL, Associate Justice.

The appeal in No. 4905 is from a decree of the Supreme Court of the District of Columbia, dismissing an amended bill in equity filed by the appellant, plaintiff below, as receiver of certain real estate.

It appears from the facts set out in the bill, and which must be accepted as true, that the plaintiff was appointed receiver on October 15, 1928, in a law case, pending in the Supreme Court of the District, of certain real estate belonging to the defendant Finance Corporation. A writ of attachment had been issued by the court in that case, and levied on the real estate described in the bill, comprising 242 subdivided lots, a large tract of acreage property, and 98 lots, included as a part of said acreage which had been subdivided and platted, and from which certain of the lots had been sold.

At the time of the appointment of plaintiff as receiver, the real estate on which the attachment had been levied was advertised for sale under a deed of trust, securing notes aggregating $100,000, which represented the deferred purchase price of the land in question. The deed of trust contained a provision for the release of the unsubdivided acreage; and the lots, upon the payment of specified amounts, derived from the sale thereof towards the satisfaction of the notes secured by the trust.

The defendant Finance Corporation then sold 154 lots to individual purchasers at an average of approximately $1,250 per lot, on which the corporation was paid under the release clause, on certain of the lots sold, a sufficient amount to reduce the notes secured by the trust to $96,000. In the sale of the lots to the individual purchasers, a deed of trust, securing the purchase notes, was taken in each case, containing a covenant requiring the defendant corporation to release the property from the original trust when the individual purchaser had paid one-half the purchase price of the lot.

The defendants Kaufman, Baum, and Goldenburg purchased the outstanding notes, secured by deeds of trust, on the lots that had been sold, it is alleged, at a price which would enable them on payment of the notes so purchased to repay the moneys advanced by them, and also to secure the release of the lots from the original deed of trust. Thereafter Kaufman and his associates purchased the notes, secured by the original deed of trust, on which there remained due and unpaid the sum of $96,000, and caused the trustees under the deed of trust to release from the obligation of said trust the 154 lots, thereby making the purchase-money notes for the lots which were secured by deeds of trust thereon first trust liens against the respective lots. Thereupon Kaufman and his associates caused the trustees to advertise all the remaining property, excepting the lots which had been released, for sale, to satisfy the original trust of $96,000.

It was to restrain the sale of this property that the bill in the present case was filed by the receiver, acting on behalf of the attaching creditors. A temporary restraining order was issued by the court pending the determination of the case on its merits. When the court dismissed the bill on motion of defendants, it entered a decree dismissing the bill; and reserving jurisdiction of the case "for the purpose of hereafter ascertaining and fixing the liability of the plaintiff and of the surety on his several undertakings filed herein, for the damages and costs sustained by said defendants, or any of them, by reason of the issuance of the Restraining Order herein issued on the 15th day of October, 1928, and the damages and costs sustained by said defendants, or any of them, by reason of the issuance of the Temporary Injunction herein issued on the 25th day of October, 1928."

When plaintiff gave notice of an appeal from the foregoing decree, the court entered an order fixing the cost bond, and further ordered "that the Temporary Injunction heretofore issued herein, on October 25, 1928, be, and it is hereby continued during the pendency of said appeal, provided, however, that the plaintiff file herein his undertaking under seal, with surety to be approved by the Court, in the maximum penalty of Six Thousand Dollars ($6,000) conditioned to pay such costs and damages as may be incurred by any party who may be found to have been wrongfully enjoined or restrained thereby; and provided further, that this order is without prejudice to the rights of said defendants, or any of them, hereafter to move to modify or vacate said Temporary Injunction, or to move to require additional or substitute security as a condition of the further continuance of said Temporary Injunction."

After the appeal in this case had been perfected and the record filed and printed in this court, the court below, on petition of the defendants, entered an order requiring the plaintiff to give a further undertaking on the temporary injunction in the sum of $6,000, and ordered that, unless the same be given within twenty days, the injunction would

stand vacated and the order continuing it terminated.

Plaintiff thereupon filed a motion to set aside the order requiring additional security, and challenging the jurisdiction of the court to enter such order in a case pending on appeal to this court. From the order denying this motion, the appeal in case No. 5080 was taken. The court below, on petition of the defendants, then entered an order permitting them to instruct the trustees to proceed and sell the property under the original deed of trust for the satisfaction of the notes secured thereby. The portion of the property not embraced within the lots which had theretofore been released by order of the defendants from the obligations of the original trust was sold, bringing a price at the sale sufficient to pay the notes secured by the original trust.

■ The authority of the receiver to bring the present action for injunction to restrain the sale of the property in question is challenged. Section 458 of the District Code provides as follows: "The court may make all orders necessary for the preservation of the property attached during the pendency of the suit; and if the property be perishable, or for other reasons a sale of the same shall appear expedient, the court may order that the same be sold and its proceeds paid into court and held subject to its order on the final decision of the case. And if it shall seem expedient, the court may appoint a receiver to take possession of the property, who shall give bond for the due performance of his duties, and, under the direction of the court, shall have the same powers and perform the same duties as a receiver appointed according to the practice in equity."

It will be observed that the statute authorizes the court to make all necessary orders for the preservation and disposition of attached property. For its preservation, if it be nonperishable property, or for its sale, if it be perishable property; and, if the court, in the exercise of its discretionary judgment, deems it essential, he may appoint a receiver to take possession of the attached property, who shall have the "same powers and perform the same duties as a receiver appointed according to the practice in equity."

It is contended that, if this section can be upheld as authorizing the appointment of a receiver in the present case, it is unconstitutional, in that it provides for the blending of cases in law and in equity. Under any reasonable interpretation of the statute, it cannot be held to even contemplate a blending of legal and equitable remedies. All that the statute provides is that a receiver appointed by the law court shall possess all the powers of a receiver appointed in equity. In other words, it extends the authority of the receiver, appointed in an action at law, to exercise his powers, if necessary, in a proceeding in equity to the same extent of an equitable receiver.

The court below, in its order, appreciated the authority conferred by the statute, and directed the receiver to hold the attached property and conserve the same, and vested him with authority "to bring such suits and to take such action as may be necessary to conserve this property," referring to the real estate held under the writs of attachment. We think there is no doubt as to the authority of the receiver to bring the present action, if, in his judgment, it be deemed necessary for the preservation of the property, until the rights of the attaching creditors can be ascertained.

This brings us to the consideration of the questions involved in the appeal in case No. 5080. It is contended by counsel for the appellant that, when the appeal was taken and perfected from the order dismissing the bill, the court below lost jurisdiction over the entire case, pending appeal.

■ The temporary injunction was issued on the filing of the bill, and with the general decree dismissing the bill the court further decreed that, pending appeal, the temporary injunction should be continued on the giving of a bond by the plaintiff in the sum of $6,000, which was done. The court undoubtedly had jurisdiction to so continue the temporary injunction in force and to require a bond to be given, but this could operate only to preserve the status quo, pending appeal. Merrimack River Savings Bank v. Clay Center, 219 U. S. 527, 31 S. Ct. 295, 55 L. Ed. 320, Ann. Cas. 1912A, 513. From this decree the appeal removed the case from the further jurisdiction of the court. If an additional bond was deemed necessary to protect the interest of the parties, pending appeal, application for the same should have been made to the appellate court. The court was likewise without authority to grant the petition of the defendants to permit them to direct the trustees to proceed with the sale of the property for the satisfaction of the notes secured by the original trust. It follows, therefore, that the sale conducted thereunder was without authority, is void, and must be set aside.

We now come to the consideration of whether or not the decree dismissing the bill can be sustained. We start our investigation with the controlling proposition that the defendants are not only the owners of the notes secured by the original trust, but likewise the owners of the notes secured by trusts on the lots sold, on which one-half of the purchase price thereof, when paid, was to be applied toward the satisfaction of the notes secured by the original trust. It is averred as a fact in the bill, and admitted by the motion to dismiss, "that prior to the month of September, 1928, although one hundred and fifty (150) lots had been sold to purchasers from the aforesaid recorded subdivision at the average price of approximately twelve hundred and fifty ($1250.00) per lot, and although a great many of said purchasers had paid in excess of one-half (½) of the purchase price on said lots, the defendant, Finance Corporation of Washington, had up to that time through the defendants, Pickford and Salisbury as trustees, caused to be released from the aforesaid blanket deed of trust only seven of said lots."

█ It is then charged in the bill that a large amount of the purchase money thus paid was received by the defendants Kaufman and his associates, and was held by them and not applied as required to the payment of the notes secured by the first deed of trust. With this conceded fact, the sale of the property under the first trust cannot be justified until the proper credits were made thereon of the amounts so received from the sale of the lots. In other words, the amount due on the first trust must be ascertained as a condition precedent to the sale of the property under it.

█ It must be remembered that the defendants Kaufman and his associates are the owners of all the trusts on said property, and further that they released the 154 lots after the attachment had been levied and the lien thereunder had been established. We fail to observe any distinction between the rights of a junior lienor, under a valid attachment, and a junior mortgagor. It is a settled rule of equity that a creditor holding a mortgage on several pieces of property, with actual notice of a junior mortgage or lien on only a portion of the property, must exhaust all his security for the satisfaction of his debt. If, under these circumstances, he releases any part of his security, he does so at his peril, and must account to the junior lienholder for any surplus realized, or which ought to have been realized, from all of his securities.

Burnham v. Citizens' Bank, 55 Kan. 545, 40 P. 912.

Under no rule of equity can the action of the defendants Kaufman and his associates, in releasing the 154 lots from liability under the first trust without applying the proper proportion of the funds derived from the sale thereof toward the satisfaction of the trust, be sustained. It follows, therefore, that, before a sale under the first trust can be sustained, the court must ascertain, through an accounting or otherwise, the amount by which the first trust would be reduced through proper credits from the funds derived from the sale of the lots, as only the balance due on the first trust constitutes a lien superior to that of the attaching creditors on the portion of the property covered by the attachment.

█ We are of the further opinion that Kaufman and his associates, after the attachments were levied, could not release the 154 lots and thereby shift the entire debt against the remaining property, to the detriment of the attaching creditors. "The right to have securities marshaled is not a lien; but neither is it a mere incident to the remedy. The right is not generally enforced by an independent action, but it exists and may be asserted whenever an opportunity is afforded. Questions frequently arise when the prior lienholder releases property upon which he alone has a lien, or satisfies his claim in full out of property on which both have liens. Of course, if the remaining property is sufficient to satisfy both liens, no complaint can be made. Where it is not sufficient and the other property is released without a satisfaction of the debt, it is held that the subsequent lienholder is entitled to a preference in payment, to the extent of the amount which should have been realized upon the property released. Where the claim is satisfied out of the property upon which there is a common lien, the junior creditor has been allowed a substitution, or a decree for subrogation, or an assignment of the rights of the prior lienor. In some instances an injunction may issue to protect the second claimant in the assertion of his right." Pomeroy, Eq. Jur. vol. 6, par. 870.

█ Coming to the procedure applicable in the case of another sale to satisfy the balance due under the first trust, the rule established by the Supreme Court of the United States in Nat. Savings Bank v. Creswell, 100 U. S. 630, 25 L. Ed. 713, is controlling in this District. The procedure there established is that where real estate, as in the present case,

is bound by a trust, and has been sold in separate parcels to various persons at different times, the portion so sold can only be subjected to the satisfaction of the trust in the inverse order of their alienation.

In that case the court holds that the doctrine and reason upon which the rule is founded is stated in Sir William Herbert's Case, 3 Coke, 11, as follows: "This case settles the question as between the vendor and purchaser, or the heirs of the vendor and the purchaser; and if there be several purchasers in succession, at different times, I apprehend in that case also there is no equality and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to A., the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to B., the remaining acre is then chargeable in the first instance with the debt as against B., as well as against A., and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency in preference to the acre sold to A.; because, when B. purchased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect we may say of him as it is said of the heir, *he sits in the seat of his grantor,* and must take it with all its equitable burdens; it cannot be in the power of the debtor, by the act of assigning or selling his remaining land to throw the burden of the judgment or a ratable part of it back upon A."

It follows that, in the event of a sale to satisfy the balance due on the first trust, the balance of the property, exclusive of the 154 lots, should be first sold and subjected to the discharge of the trust, and any surplus should be applied to the satisfaction of the attachment liens. Inasmuch as the attachment only runs against this portion of the property, and does not embrace the 154 lots, and since the lots are only subject to the first trust to the extent of one-half of the purchase price thereof, it is unnecessary for us to consider what right, if any, the attaching lienors may have, in case of deficiency, against the funds hereafter derived from the sale of the lots and applicable to the satisfaction of the original trust.

The decrees are reversed, with costs, and the causes are remanded for further proceedings not inconsistent with this opinion.