**FIDELITY & CASUALTY CO. OF NEW YORK v. MASSACHUSETTS MUT. LIFE INS. CO.**
No. 3749.

Circuit Court of Appeals, Fourth Circuit.
Jan. 8, 1935.

882

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

Robert Ruark, of Raleigh, N. C. (Ruark & Ruark, of Raleigh, N. C., on the brief), for appellant.

J. O. Carr, of Wilmington, N. C. (Carr, Poisson & James, of Wilmington, N. C., on the brief), for appellee.

PARKER, Circuit Judge.

This suit was instituted by the Fidelity & Casualty Company of New York, surety upon a bond given by T. A. Green of Wilmington, N. C., to stay collection of income taxes assessed against him pending appeal to the Board of Tax Appeals. The bill asked that complainant, having paid the taxes assessed against Green, be subrogated to the lien of the United States on certain real estate owned by Green, which subsequent to the docketing of the lien for taxes had been mortgaged by him and purchased by the defendant Massachusetts Mutual Life Insurance Company at mortgage sale, and that the lien be foreclosed. The answer, in addition to pleading the statute of limitations, which is not relied on in this court, averred that the lien of the government on the property in controversy had been extinguished as the result of the execution of a release by the collector of internal revenue, that complainant had released property properly applicable to the satisfaction of its claim in advance of the property of defendant, and that complainant, subsequent to the acquisition of the rights of defendant, had executed a bond undertaking to protect against the lien the purchaser from defendant of property which in equity should have been subjected to the satisfaction of the lien in advance of the property in controversy. The court below dismissed the bill, and complainant has appealed.

The facts have been stipulated. Those relating to the lien may be briefly stated. On March 12, 1926, the Commissioner of Internal Revenue assessed additional income taxes and penalties against Green for the year 1920, amounting to $20,172.27; and notice of this assessment was duly filed in the office of the register of deeds of New Hanover county on April 2, 1926, and created a lien for the amount of the taxes on the property of Green in that county. Green appealed from the assessment to the Board of Tax Appeals; and, on April 3, 1926, filed with the collector of internal revenue for North Carolina a bond in the sum of $20,000, with complainant as surety, to stay the collection of the taxes pending appeal. On December 11, 1928, the Board finally determined the amount due under the assessment appealed from, fixing the liability for tax, penalty, and interest at $4,746.34. Green being unable to pay the amount so assessed, it was paid by complainant, on May 2, 1929, as surety on his

bond; and a certificate was executed by the collector of internal revenue reciting that the taxes had been paid and that the lien therefor had been discharged in full, "in so far as the United States is concerned, payment having been made by the Fidelity and Casualty Company of New York, surety for the taxpayer, under its bond to Gilliam Grissom, Collector, dated April 3, 1926."

The property which the complainant seeks to subject to the lien under the principles of subrogation is the Garrell building in Wilmington, New Hanover county, N. C. This building, which was valued for taxation at $80,000, was owned by Green at the time of the docketing of the tax lien on April 2, 1926. Six days later, on April 8, 1926, he executed a deed of trust on it to one Rawlings as trustee to secure a debt of $50,000 to the defendant. He defaulted in the payment of the debt so secured, and the property was sold by the trustee under the terms of the deed of trust on February 25, 1929, and was purchased by defendant.

■ The property with respect to which the answer avers a release from the lien was the St. Francis Hotel property. This was sold on December 21, 1929, under a deed of trust antedating the lien, for a sum $3,035.39 in excess of the debt secured; and this excess was paid into the hands of the clerk of court of New Hanover county and distributed among creditors in a special proceeding. Complainant, being a party to this proceeding, received $1,943.44 of this amount and consented that the remainder be distributed to lien claimants whose liens upon the property were junior to its own. There can be no question but that, to the extent of the funds thus released to junior claimants, which it might have applied upon its claim, it has waived any right which it may have had to enforce the tax lien in question against the property of defendant. Jones v. Myrick, 8 Grat. (Va.) 179; Jackson v. Finance Corporation, 59 App. D. C. 309, 41 F.(2d) 103; 38 C. J. 1376. If we correctly understand the position of complainant in this court, it does not make serious contention to the contrary.

The property which Green and complainant have dealt with in such way as to give rise to the principal equitable claim of defendant is the Wilmington Hotel property. This property was owned by Green at the time of the docketing of the tax lien, and was valued for taxation at $175,000. Green executed a deed of trust on this property on December 1, 1927, more than a year and a half after the execution of the deed of trust securing the debt to defendant. This deed of trust was given to secure a loan of $125,000 made by the Old Dominion Mortgage Company, which, before making the loan, required Green to furnish a title insurance policy in the sum of $25,000 to protect it against the tax lien in question. The Lawyers' Title Insurance Company executed this policy, but, as a condition of executing same, required Green to furnish it an indemnifying bond in the sum of $25,000, which was executed by complainant. The condition of this bond was that the title insurance company be protected against the tax lien. It is stipulated that at the time of the execution of this bond defendant's deed of trust on the Garrell building was on record in New Hanover county, but that complainant had no actual knowledge thereof. On default by Green, the Wilmington Hotel property was sold under the deed of trust on April 6, 1929 and was purchased by the Old Dominion Mortgage Company.

■ We entertain no doubt as to the general principle that the surety on a bond executed to the government to stay the collection of taxes pending appeal, who is required to pay the taxes because of the execution of the bond, is subrogated to the rights of the government under any lien for the taxes which it may have. See In re Baltimore Pearl Hominy Co. (C. C. A. 4th) 5 F.(2d) 553; Ætna Life Ins. Co. v. Middleport, 124 U. S. 534, 8 S. Ct. 625, 31 L. Ed. 537; Dayton v. Treasurer of Pueblo County, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190; and notes in 24 A. L. R. 1504 et seq., and 83 A. L. R. 1133 et seq. And we do not think that here the certificate of release executed by the collector when the taxes were paid by the surety destroyed the surety's right to subrogation to the lien. The purpose of the amendments made by the Act of May 29, 1928, to section 3186 of the Revised Statutes (26 USCA § 115), was to permit the clearing of titles against tax liens where these liens had become unenforceable or bond had been given securing the payment of the taxes, not to destroy rights of subrogation under existing liens of persons who might be called on to pay taxes under bonds which they had executed or who might pay same for the protection of their interest in the property; and paragraph (d) of the act (26 USCA § 115 (d), providing that a certificate of re-

884

lease or partial discharge issued under the section should be conclusive that the lien upon the property had been extinguished, must be construed in the light of this purpose. The certificate upon which defendant relies recites that the taxes have been paid by the surety; and this shows that they have not been "satisfied" in the sense in which that term is used in the statute, but had been paid by the surety in such way as to preserve the lien for its benefit.

But we think that complainant must be denied subrogation because of the equity of defendant, under what has been called the "inverse order of alienation" doctrine, to have the lien satisfied out of the Wilmington Hotel property rather than out of the Garrell building. That doctrine, laid down in Sir William Herbert's Case, 3 Coke, 11, and by Lord Chancellor Hardiwicke in Lanoy v. Duke and Duchess of Athol, 2 Atk. 444, and followed by Chancellor Kent in Clowes v. Dickenson, 5 Johns. Ch. 235 and by the Supreme Court in National Savings Bank v. Creswell, 100 U. S. 630, 641, 25 L. Ed. 713, is recognized as the law in North Carolina. Page Trust Co. v. Godwin, 190 N. C. 512, 130 S. E. 323, 325; Brown v. Harding, 170 N. C. 253, 86 S. E. 1010, Ann. Cas. 1917C, 548. Briefly stated, it is that a mortgagee or other lienor, where the land subject to lien has been aliened in separate parcels successively, shall satisfy his lien out of the land remaining in the grantor or original owner, if possible, and, if that be insufficient, that he shall resort to the parcels aliened in the inverse order of their alienation. 18 R. C. L. 468; 34 C. J. 619; Drexler v. Commercial Savings Bank (C. C. A. 8th) 5 F.(2d) 13, 15; Neely v. Williams (C. C. A. 8th) 149 F. 60, 63.

Although this equity is frequently discussed as arising out of the equity to marshal assets where a senior incumbrancer has two funds and a junior only one out of which his debt may be made, the two doctrines are quite distinct. The equity of marshaling, until it is asserted, is a mere inchoate equity subject to displacement, whereas the equity of the purchaser of land subject to a lien to have that lien satisfied out of land remaining in the grantor and then out of the parcels subsequently conveyed in inverse order of alienation, where it exists at all, is a fixed indefeasible right. 18 R. C. L. 470; Newby v. Fox, 90 Kan. 317, 133 P. 890, 47 L. R. A. (N. S.) 302. The equity is recognized not only in favor of a prior grantee, but also in favor of that one of a number of successive mortgagees of separate parcels who is prior in time. 18 R. C. L. 471; Boone v. Clark, 129 Ill. 466, 21 N. E. 850, 5 L. R. A. 276; note in Ann. Cas. 1916D, at page 1125, and cases there cited. And the rule is applied in the case of alienation by mortgage, foreclosure, and purchase by the mortgagee. Howser v. Cruikshank, 122 Ala. 256, 25 So. 206, 82 Am. St. Rep. 76.

The ground of the rule, as recognized in most of the states of this country, is thus stated by Mr. Justice Miller, speaking for the Supreme Court in National Savings Bank v. Creswell, supra: "That ground is that the first purchaser has a right to suppose that the part of the mortgaged property which he leaves with the mortgagor will in his hands be first subjected to the payment of the mortgage he has made. * * * But the principle goes further, and holds that when a second purchaser from the mortgagor buys either all or a part of the incumbered property which remains, he cannot place himself in a better position than his grantor, and revive the burden on the first purchaser's land, from which it had been wholly or partially relieved by its primary pressure on the land left by him in the hands of the mortgagor."

The Supreme Court then proceeds to approve Chancellor Kent's statement of the doctrine and the reason therefor in Clowes v. Dickenson, supra, as follows:

"After referring to the case of Sir William Herbert, he says: 'This case settles the question as between the vendor and purchaser, or the heirs of the vendor and the purchaser; and if there be several purchasers in succession, at different times, I apprehend in that case also there is no equality and no contribution as between these purchasers. Thus, for instance, if there be a judgment against a person owning at the time three acres of land, and he sells one acre to A., the two remaining acres are first chargeable in equity with the payment of the judgment debt, as we have already seen, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to B., the remaining acre is then chargeable in the first instance with the debt as against B., as well as against A.; and if it should prove insufficient, then the acre sold to B. ought to supply the deficiency in preference to the acre sold to A.; because, when B. pur-

chased, he took his land chargeable with the debt in the hands of the debtor, in preference to the land already sold to A. In this respect we may say of him as it is said of the heir, he sits in the seat of his grantor, and must take it with all its equitable burdens; it cannot be in the power of the debtor, by the act of assigning or selling his remaining land to throw the burden of the judgment or a ratable part of it back upon A.' The doctrine and the reason upon which it is founded cannot be better stated than in this extract from the opinion."

The court then suggests an additional reason for the rule as follows:

"We may, as an additional reason, suggest a principle often called into action in recent times in the courts; namely, that where one of two innocent persons must suffer a loss, it should fall on him who by reasonable diligence or care could have protected himself, rather than on him who could not. In the case supposed, the second purchaser, at the time of his purchase, knowing that the land which he buys is subject to the incumbrance before that already sold, can exact of the vendor security or protection against the incumbrance, which it is out of the power of the first vendor to do at the time his risk is increased by the very act of the second purchaser."

■ It is true that this equity, as was pointed out in Hawhe v. Snydaker, 86 Ill. 197, and Brown v. Harding, supra, while a superior right against the mortgagor and subsequent alienees, is a subordinate right against the paramount incumbrancer and will not be enforced in such way as to destroy or even impair his rights. See, also, note in Ann. Cas. 1916D, at page 1124, and cases cited. But the complainant occupies here a dual position; it has paid the tax due by Green, and it has executed a bond indemnifying the title insurance company against loss on account of the tax lien. This bond was executed in connection with the mortgage of the Wilmington Hotel property as a result of which that property was acquired by the Old Dominion Mortgage Company. If the tax lien were enforced against that property, therefore, the loss would fall upon complainant; and complainant by reason of its execution of the bond is, on the principle of subrogation, the one against whom the equity of defendant is in reality asserted with respect to that property. We think that in such case the equity may be asserted against complainant, even though complain-

ant is the holder of the paramount lien. Thus it has been held that the equity may be asserted to require the sale of tracts of land in inverse order of alienation, even though the paramount incumbrancer has acquired a mortgage on the tract last conveyed. Ingersoll v. Somers Land Co., 82 N. J. Eq. 476, 89 A. 288. And the rule applies where the last alienee becomes the holder of the paramount incumbrance. Bank of Commerce of Evansville v. First Nat. Bank, 150 Ind. 588, 50 N. E. 566.

■ It is argued, however, that the equity may not be asserted against complainant because, at the time of the execution of the bond, complainant had no knowledge of the mortgage placed by Green upon the Garrell building. For this position complainant relies upon the rule that, where the owner of the paramount incumbrance releases property last aliened from the lien of the incumbrance without actual notice of the rights of other alienees, the latter cannot complain of the enforcement of the incumbrance, even though the conveyances to them may have been of record at the time of the release. See Ann. Cas. 1916D, at page 1133. The cases, however, are not parallel. Where the owner of the paramount incumbrance releases security therefrom, there is ordinarily nothing to put him on notice that the owner of the property incumbered has conveyed any part of it, and he is not chargeable with notice of such conveyance unless it is expressly brought to his attention. The one who executes a bond to protect an alienee against a lien, however, stands in a different position. He knows of the existence of the lien. He knows that it can be enforced against the property that is being conveyed. He is interested in knowing what other property, if any, can be applied to its satisfaction. If he is diligent and investigates the holdings of the grantor and the incumbrances against them, as he should do in the exercise of ordinary care, he will learn of prior conveyances which are of record and the equities of prior alienees. If he does not do this, but executes the bond without inquiring into the state of grantor's affairs, the enforcement of the lien against the property conveyed is no more than he had in contemplation. It is but fair, as well as reasonable, therefore, to hold that the surety on such a bond, given to protect against the enforcement of a lien, is chargeable with notice of what the records disclose as to prior conveyances by the grantor of prop-

erty subject to that lien. He is fairly put upon inquiry by the circumstances and is chargeable with knowledge of what the inquiry would have disclosed. See Brush v. Ware, 15 Pet. 93, 112, 10 L. Ed. 672, and Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 437, 440, 12 S. Ct. 239, 35 L. Ed. 1063.

One who executes such bond is, as respects notice, in exactly the same position as the subsequent alienee who requires the bond for his protection; and it seems fairly well settled that subsequent alienees are bound by constructive notice of what the records disclose as to prior conveyances by the grantor of property subject to the lien. See Miller v. Holland, 84 Va. 652, 5 S. E. 701; Brown v. Simons, 44 N. H. 475; Gray v. H. M. Loud & Sons Lumber Co., 128 Mich. 427, 87 N. W. 376, 54 L. R. A. 731; Deavitt v. Judevine, 60 Vt. 695, 17 A. 410; Iglehart v. Crane, 42 Ill. 261; State v. Titus, 17 Wis. 241; Ann. Cas. 1916D, at page 1128, and other cases there cited. The reason for the rule was thus well stated with respect to a case where the prior incumbrance was a mortgage, in Brown v. Simons, 44 N. H. 475, as follows:

"If the first conveyance by the mortgagor after the mortgage, is duly registered by the grantee, he has done all that he can do to give notice of the new burthen that is thereby thrown upon the part which is retained by the mortgagor; and a second purchaser, charged, as he clearly is, with notice of the mortgage upon the whole land, and when the deed is registered, knowing that the extent of the burthen upon his own purchase must depend upon the fact of there having been a prior conveyance by the mortgagor, would, upon due inquiry, and in the exercise of reasonable diligence, be led by the record to a knowledge of the true state of the title, and the extent of the incumbrance upon the land conveyed to him. This he is directly interested to know, and the first purchaser has placed the means of knowledge reasonably within his reach, and it is his own fault if he neglects to avail himself of it."

Where the paramount incumbrance is a lien or judgment, the language used in the foregoing quotation with respect to the land aliened being a part of the land embraced in the mortgage is not apropos; but the principle involved is the same. The alienee knows that the land conveyed to him is subject to the lien against his grantor, and he knows that his ability to shift the burden thereof to the grantor depends upon the property remaining in the latter; and, in the exercise of ordinary diligence, therefore, he will look to the records for the grantor's holdings, where he will learn of conveyances of other property subject to the lien, if there be any. The first alienee here had done all in its power to preserve its equity when it placed its deed on record. In doing so, it had followed the statutes of North Carolina enacted to protect against creditors of and purchasers from the grantor. C. S. N. C. § 3309.

It is hardly conceivable that the Old Dominion Mortgage Company and its attorneys did not know the entire situation with respect to the property of Green when it accepted the deed of trust from him; and there is no contention that it did not have full knowledge thereof. In such situation it is not thinkable that defendant's equity thereupon arising, to have the lien satisfied out of such property in the hands of the Old Dominion Mortgage Company, should be defeated by reason of the fact that that company secured a bond against the enforcement of the tax lien from the company that was on the taxpayer's bond for the payment of the tax. As it appears, therefore, that the Wilmington Hotel property in the hands of the Old Dominion Mortgage Company is subject to defendant's equity, and as complainant is bound to protect that company against the assertion of the equity, it is bound by the equity irrespective of notice. It can occupy no better position with regard thereto than the mortgage company.

The inverse order of alienation doctrine cannot ordinarily be invoked so as to interfere with the government in the collection of taxes. Harris Orchard Co. v. Tharpe, 177 Ga. 547, 170 S. E. 811, 88 A. L. R. 1213, and note at page 1216. There is no reason, however, for not applying it in the case of an individual who seeks subrogation to a tax lien; and it is so applied. First Nat. Bank of Boston v. Proctor (C. C. A. 1st) 40 F.(2d) 841; Herrington v. Parham, 166 Ga. 204, 142 S. E. 858; Columbia Trust Co. v. Alston, 163 Ga. 83, 135 S. E. 431.

There was no error, and the decree appealed from will be affirmed.

Affirmed.